212 N.J. Super. 38 (1986)
513 A.2d 962
AVEMCO INSURANCE CO., AND BARRY N. DASH, EXECUTOR OF THE ESTATE OF HERBERT G. DASH, PLAINTIFFS-RESPONDENTS,
v.
UNITED STATES FIRE INSURANCE CO., WILCO AVIATION CORP., BEECH AIRCRAFT CORP., AVCO CORP., BENDIX CORP., MATTITUCK AIR BASE, INC., LORRAINE CHRISTIAN, INDIVIDUALLY, AND AS ADMINISTRATRIX AD PROSEQUENDUM AND AS GENERAL ADMINISTRATRIX OF THE ESTATE OF RICHARD P. CHRISTIAN, DECEASED; AND HELEN BOGEN, INDIVIDUALLY, AND AS EXECUTRIX OF THE ESTATE OF STEFAN BOGEN, DECEASED. DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1985.
Decided January 24, 1986.
*40 Before Judges MORTON I. GREENBERG, LONG and HAVEY.
Lisa F. Chrystal argued the cause for appellant Helen Bogen and the Estate of Stefan Bogen (Braff, Litvak, Ertag, Wortmann, Harris & Sukoneck, attorneys; Harold I. Braff, of counsel; Lisa F. Chrystal, on the brief).
George N. Arvanitis argued the cause for appellant United States Fire Insurance Company (Carton, Nary, Witt & Arvanitis, attorneys; George N. Arvanitis, of counsel; Jamie S. Perri, on the brief).
Wayne Greenfeder argued the cause for respondents Avemco Insurance Company and Barry H. Dash, executor of the Estate of Herbert G. Dash (Schwartz and Andolino, P.A., attorneys; Anthony Andolino, of counsel and on the brief; Wayne Greenfeder, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
This appeal involves the interpretation of a policy of insurance issued by the United States Fire Insurance Company (U.S. Fire) to its insured Wilco Aviation Corp. (Wilco). The relevant policy provisions are as follows:
III. Definition of "Insured." The unqualified word "Insured" whenever used in this Policy with respect to Coverage A, B, C and D, includes not only the Named Insured but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the permission of the Named Insured. The provisions of this paragraph do not apply:
* * * * * * * *
(c) to any person operating the aircraft under the terms of any rental agreement or training program which provides any remuneration to the Named Insured for the use of said aircraft.
Today we hold that the policy language is clear and the exclusion unambiguous but that where, as here, the person who actually operated the aircraft at the time of an accident is not ascertainable, the insurer cannot invoke the exclusion.
*41 The case arose on June 27, 1981 when Stefan Bogen, a student pilot rented an airplane from Wilco. He took the plane up in the company of Herbert Dash, a licensed pilot and Richard Christian, a passenger. Bogen and Dash were in the front seats and Christian in the rear. Bogen, as a student, was not authorized to carry a passenger without a licensed pilot aboard. The plane was a dual controlled Beech Aircraft allowing operation separately or in unison from the front seats. For unknown reasons, it crashed in Manahawkin, New Jersey, killing all aboard. According to the conclusions of an investigator from the National Transportation Safety Board, although there was some evidence to show that Bogen was positioned in the left front of the plane and Dash in the right, there is no way to determine who was operating the plane or the manner of its operation prior to the crash.
Thereafter, Dash's estate (Dash) sued the estate of Bogen (Bogen) on the basis that Bogen was "in control of the aircraft," and also named as defendants Wilco and various manufacturers of the plane or its component parts including Beech Aircraft Corp.; Avco Corp.; Bendix Corp. and Mattituck Airbase, Inc. Subsequently, the estate of Richard Christian (Christian) instituted a suit against the same defendants as those named in Dash's suit except that Dash was also included as a defendant. Bogen then filed suit against the defendants named in Christian's suit (except Bogen itself) alleging that Dash was the pilot of the plane and that Bogen was only a passenger. The cases were consolidated for trial. Bogen and Dash demanded that U.S. Fire defend and indemnify them because they were additional insureds under the policy U.S. Fire had issued to Wilco. U.S. Fire denied that it had an obligation to defend and indemnify either Bogen or Dash because, at the time of the crash, the aircraft was being operated under a rental agreement, which, according to U.S. Fire, constituted a risk excluded from coverage under (c) of the policy.
At the time of the accident Dash had personal flight insurance issued by Avemco Insurance Company (Avemco). Avemco *42 and Dash then filed a complaint for declaratory judgment, seeking a determination that Dash was an additional insured under the U.S. Fire policy issued to Wilco. All parties to the three liability actions were named in the declaratory judgment action and answers were filed on behalf of all defendants. The answer filed on behalf of Bogen cross-claimed against U.S. Fire for coverage. Thereafter motions for summary judgment were filed on behalf of Avemco, Dash, U.S. Fire and Bogen.
The trial judge granted the motion for summary judgment in favor of Avemco and Dash and denied the motions of U.S. Fire and Bogen. He reasoned that Dash was an "additional insured" under U.S. Fire's policy, that he could not be shown to have been "operating" the aircraft within the meaning of the exclusion, and that U.S. Fire was a primary insurer as to Dash. He held Bogen, on the other hand, not to be covered by the U.S. Fire policy because he was the renter of the aircraft from Wilco, an event which the judge concluded, triggered the exclusion as to him. In addition, the judge granted counsel fees and costs in favor of Avemco.[1]
*43 This appeal ensued in which U.S. Fire challenges the grant of summary judgment to Dash; the denial of its own motion for summary judgment; the trial judge's determination that the U.S. Fire policy provides primary insurance to Dash; and the grant of counsel fees and costs to Avemco. Bogen challenges the denial of his motion for coverage.
We affirm insofar as the grant of summary judgment to Dash and Avemco, the denial of U.S. Fire's motion for summary judgment, the determination of the primacy of the U.S. Fire policy and the grant of counsel fees and costs to Avemco are concerned. We reverse the denial of summary judgment to Bogen to whom we believe U.S. Fire owes a duty of defense and indemnification.
On this appeal, U.S. Fire claims that neither Dash nor Bogen are insured under the policy issued to Wilco; that the language of the policy is unambiguous in withholding coverage to any person operating the aircraft under the terms of a rental agreement; and that the policy can only be interpreted as excluding coverage for all risks associated with a rental situation.
Bogen contends that exclusion (c) requires operation under the terms of the rental agreement; that the burden of proof rests with U.S. Fire to demonstrate that Bogen was operating the plane; that Dash was the "pilot in command" and as such is considered the operator or the "sole manipulator of the controls," and that since Dash was operating the plane, only he could have been subject to the exclusion.
Dash and Avemco claim that there is an ambiguity between paragraph III of the policy, which defines additional insureds, and exclusion (c) and that one reasonable interpretation of the ambiguous language is that it only excludes coverage for one who is operating the aircraft pursuant to a rental agreement *44 between that person and the named insured. They urge that since the aircraft's operator cannot be identified, Dash is covered because Bogen rented, not Dash.
We note initially that it does not necessarily follow that because several different interpretations of the language of an insurance policy are advanced that the policy is ambiguous. In the nature of things, parties will urge the court to "interpret" policy language to suit their theory of a case regardless of the clarity of the actual language involved. Indeed that is what has happened here. Despite the various interpretations advanced, we find absolutely nothing ambiguous about the language of this policy. Clearly Bogen and Dash meet the definition of additional insureds under paragraph III since they were "using or riding in the aircraft." The only question is whether they are excluded under (c) which applies "to any person operating the aircraft under the terms of any rental agreement ..."
In this connection, we reject the argument advanced by Dash and Avemco that the reasoning in the decision in U.S. Fire Ins. Co. v. Pruess, 394 So.2d 468 (Fla.Ct.App. 1981), the only case directly on point, should be adopted here. In that case it was undisputed that Preuss was an F.A.A. examiner who was operating an aircraft which had been rented by Adams, a student pilot. The plane was insured under a U.S. Fire policy with provisions identical to those in this case. Preuss sued U.S. Fire claiming to be an additional insured. U.S. Fire argued under (c) that Pruess was not an additional insured because at the time of the accident, he was operating the aircraft under a rental agreement signed by Adams. The court concluded that the "renter-pilot" was Adams, not Pruess, even though Adams was not "operating" the plane at the critical instant in the sense of manipulating the controls. It rejected U.S. Fire's expansive reading of the "renter-pilot" exclusion, also advanced here, noting that it would place outside the realm of coverage all occupants of an airplane when the craft was operated pursuant *45 to a rental agreement. The Pruess court held that the exclusion
... covers any person while using or riding in the aircraft unless that person is operating the aircraft pursuant to a remunerative rental agreement between that person and the named insured. Therefore, a person who pays rent to the named insured for use of an airplane which he is operating is excluded from coverage.... Id. at 470 [Emphasis added].
Pruess was covered since he was not the renter. Under this reasoning, Dash would be covered in this case.
While we agree with Pruess insofar as it held that the language of the U.S. Fire policy falls far short of what would be required to unequivocally exclude all risks connected with an airplane rental from coverage, there we part company. The Pruess construct may be a theoretically sound statement of what should and should not be covered under a carefully articulated "renter-pilot" exclusion, but it finds absolutely no support in the language of the U.S. Fire policy which was present in that case and which is at the heart of this case. There is simply nothing in that language which suggests that only the actual renter of the plane can fall within exclusion (c). Rather, the language of (c) quite clearly makes the identity of the person who rented the airplane irrelevant. It is "operation" under the terms of a rental agreement which triggers the exclusion regardless of the parties to the agreement.
We turn then to the question of who was "operating" the plane. We find that this term in the policy is unambiguous as well and that it refers to the individual in actual control of an aircraft. The problem here is not with the term "operation" but with the fact that it is impossible to ascertain whether the plane was being controlled from the left or right front seat or both. This being the case neither Dash nor Bogen could be excluded under the policy since U.S. Fire cannot establish who was operating the plane. As in any similar situation, it is the burden of the insurer to demonstrate that coverage does not exist because of the exclusions within the policy. Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 399 (1970). This it could not *46 do. Thus, the trial judge erred in denying Bogen's motion for summary judgment.
We recognize, as Bogen has argued, that several of our sister jurisdictions have undertaken to address the question of who is operating a dual control aircraft by creating a presumption of responsibility on the part of the so-called "pilot in command" as defined in 14 C.F.R. 91.3 thereby obviating the need to prove who was actually operating the plane at a given moment. Lange v. Nelson-Ryan Flight Service Inc., 259 Minn. 460, 108 N.W.2d 428 (1961). See also Ohio Rev.Code.Ann. § 4561.23 which defines "pilot in command" and concludes that:
(F) In the event that the occupants and their positions in the airplane at the time of the crash cannot be established otherwise from the evidence with reasonable certainty, it is presumed that the airplane was being flown at the time of the crash, and immediately prior thereto, by the person occupying the pilot-in-command seat, as designated above, during or immediately before take off.
We see no reason why we (or indeed the Legislature) would have any interest in refining the language of an insurance policy by fiat. If the insurer does not see fit to more carefully articulate the term "operating" in exclusion (c) and this situation recurs, the failure to prove "operation" by the appropriate standard will eliminate the applicability of the exclusion, no more and no less. This approach is in conformity with the standards generally applicable in our jurisprudence and with the more specific rules governing the interpretation of insurance policies. We think it is up to the insurer to utilize precise language to put the matter beyond reasonable question and to avoid the problem here. Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8 (1961). Short of that, it will be subject to the failure of proof inherent in the situation here presented. Accord, Todd v. Weikle, 36 Md. App. 663, 376 A.2d 104, 108 (Md. App. 1977). We do not know if the confluence of events in this case which resulted in the inability to ascertain the operator of the plane was an anomaly or whether it is a recurring scenario. Either way, it seems to us that if the insurer wishes to avoid the result reached here, it will be up to *47 it to more carefully articulate the risk it wishes to exclude from coverage.
On the issue of which policy was primary it is well established that an insurer under an excess clause is not liable until the insurer with the pro rata clause has paid to the extent of its policy liability. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 561-562 (1959); Atlantic Mut. Ins. Co. v. Continental Nat. Am. Ins., 123 N.J. Super. 241, 245 (Law Div. 1973). Here the trial judge properly found that U.S. Fire's policy contained a pro rata clause and that Avemco's policy specifically provided that it would be excess over any other valid and collectible insurance. Thus, his determination as to the primacy of the U.S. Fire policy was entirely proper.
As to counsel fees, it is clear that an excess carrier is entitled to reimbursement for its defense expenses from the primary carrier who has wrongfully refused to defend its insured. Rooney v. West Orange Tp., 200 N.J. Super. 201 (App.Div. 1985). Although U.S. Fire urges that a distinction exists where, as here, a novel question is presented, this would not automatically invalidate an award of counsel fees. Tooker v. Hartford Accident & Indemnity Co. 136 N.J. Super. 572 (App.Div. 1975), certif. den. 70 N.J. 137 (1976). Nor is the fact that this dispute was between carriers as opposed to the insured and his carrier critical to the question of fees. State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co., 57 N.J. 174 (1970). There is simply nothing in this record which would suggest that the trial judge abused his discretion in determining that Avemco should be awarded attorneys fees for the prosecution of this declaratory judgment action. Kistler v. N.J. Mfts. Ins. Co., 172 N.J. Super. 324, 329 (App.Div. 1980).
Affirmed in part. Reversed in part. Remanded for the entry of an order in conformity with this opinion. We do not retain jurisdiction.
NOTES
[1] Generally, where the duty to defend under the terms of a general liability policy is at issue, the underlying liability complaint is laid along side the policy and the test is whether the allegations of that complaint, on its face, fall within the risk insured against. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512-513 (1965); Danek v. Hommer, 28 N.J. Super. 68, 77 (App.Div. 1953), aff'd. o.b. 15 N.J. 573 (1954). But here the identity of the operator of the aircraft is left entirely in doubt by the allegations in the three underlying wrongful death cases: the Dash Estate alleges that Bogen was the "person in control of the aircraft"; the Bogen Estate alleges that Dash was the "pilot", and the Christian complaint alleges that Dash was the "pilot" and Bogen and "co-pilot." Since "operation" was an essential issue as to coverage, the better practice would have been to defer the declaratory judgment actions until after trial of the underlying cases where the issue would have been resolved. See Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 388-390 (1970); Ohio Cas. Ins. Co., supra, 44 N.J. at 512-513. The trial court, however, made its determination prior to resolution of the underlying actions, based on the facts adduced from discovery and certifications in support of the summary judgment motions. All of the parties, including U.S. Fire, apparently acquiesced in this approach to disposition of the coverage issues. In the circumstances, U.S. Fire cannot complain if, during the underlying actions, a different resolution of the "operation" issue is made by either the trial court as a matter of law or by the triers of fact.