INTERFACE FLOORING SYSTEMS, INC. *v.* AETNA CASUALTY AND SURETY COMPANY ET AL.
(SC 16602)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 19—officially released September 3, 2002

*R. Bradford Fawley*, for the appellant (plaintiff).

*Louis B. Blumenfeld*, with whom was *Lorinda S. Coon*, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Interface Flooring Systems, Inc., appeals[1] from the summary judgment

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

rendered by the trial court in favor of the defendants[2] in this action, contending that they were obligated under certain insurance policies to reimburse the plaintiff for expenses it had incurred in defending against a federal lawsuit brought against it. On appeal, the plaintiff claims that the trial court improperly concluded that: (1) the law of Georgia rather than the law of Connecticut applied to the substantive issues in the case;[3] and (2) the defendant had no obligation to reimburse the plaintiff for the expenses that it had incurred without tendering the defense of the lawsuit to the defendant (pre-tender expenses). We conclude that the trial court properly determined that the law of Georgia controlled, and that the insurance policies did not cover the plaintiff's pre-tender expenses. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff, a Georgia corporation, is an international manufacturer and seller of carpet tiles. The defendant sold the plaintiff five commercial general liability insurance policies from July, 1986, to July, 1991. In March, 1990, Milliken and Company (Milliken), a competitor of the plaintiff,

[2] The three named defendants were originally three separate divisions of Aetna Insurance Company: Aetna Casualty and Surety Company; The Standard Fire Insurance Company; and The Automobile Mutual Insurance Company of Hartford. Aetna Casualty and Surety Company has since become Travelers Casualty and Surety Company. For convenience, we refer to these entities together as the defendant.

[3] Early in the litigation process, the parties requested that the trial court make a determination concerning the choice of law issue. The trial court, *Aurigemma, J.*, issued a decision concluding that Georgia law should be applied to the substantive issues of the case. The plaintiff thereafter filed a motion for reconsideration of this ruling. Before a decision was made on the plaintiff's motion for reconsideration, the case was transferred to the Complex Litigation Docket of the Superior Court, where the court, *Sheldon, J.*, granted the defendant's motion for summary judgment. In his summary judgment memorandum of decision, Judge Sheldon again addressed the conflict of law issue and also concluded that Georgia law applied. In this opinion, we review only Judge Sheldon's ruling on the choice of law issue.

filed an action in federal court against the plaintiff for alleged copyright infringement and unfair trade practices in the design, manufacture and sale of certain carpet tiles.[4] The plaintiff defended the action aggressively, employing experienced Georgia and New York law firms, but never requested the defendant to provide a defense to the action. In September, 1990, the plaintiff and Milliken reached a nonmonetary settlement, with each party agreeing to pay its own attorney's fees and costs. The plaintiff's defense costs exceeded $330,000. In March, 1991, six months after the settlement of the federal action, the plaintiff contacted the defendant and sought reimbursement for the defense costs. In November, 1991, the defendant rejected the plaintiff's claim and the plaintiff thereafter initiated this action.

In the trial court, the plaintiff contended that, under Connecticut law, it was entitled to reimbursement for pre-tender expenses pursuant to the policies issued by the defendant. The defendant countered that Georgia law governed the dispute and that, under the law of that state, the plaintiff was not entitled to recover pre-tender expenses. The trial court concluded that Georgia law governed the issue and that, on the basis of Georgia case law interpreting similar policy language, the plaintiff had forfeited its right to be reimbursed for pre-tender expenses by failing to comply with certain policy conditions requiring the plaintiff immediately to forward all lawsuit papers to the defendant. Accordingly, the trial court granted the defendant's motion for summary judgment. This appeal followed.

On appeal, the plaintiff claims that Connecticut law should have been applied to the substantive issues in this case and that the trial court improperly concluded

---

[4] *Milliken & Co.* v. *Interface Flooring Systems, Inc.*, United States District Court for the Southern District of New York, Docket No. 90CV1361 (March 1, 1990).

that it was barred from recovering pre-tender defense costs. The defendant counters that the trial court was correct in applying Georgia law to the issues in this case and in concluding that "the policies here at issue provide no coverage for the pre-tender expenses incurred by [the plaintiff] in defending the Milliken lawsuit." We agree with the defendant.

We begin by setting forth the standard of review that governs our resolution of this appeal. "The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 792, 749 A.2d 1144 (2000); see Practice Book § 17-49. The trial court, in deciding a motion for summary judgment, must consider the facts in the light most favorable to the nonmoving party. *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 746 A.2d 730 (2000); *Serrano* v. *Burns*, 248 Conn. 419, 424, 727 A.2d 1276 (1999). The party seeking summary judgment bears the burden of showing the lack of any issue of material fact. *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). The opposing party must demonstrate that there is a genuine issue of material fact; it is insufficient for the opposing party merely to assert that a disputed issue exists. Id.

I

As a threshold matter, we must decide whether Georgia or Connecticut law controls the substantive issue in this appeal, namely, whether the defendant is liable for the plaintiff's pre-tender expenses. We conclude that the trial court properly applied Georgia law, although

we employ different reasoning in reaching our conclusion.

The following facts are relevant to the resolution of this issue. The plaintiff is incorporated in the state of Georgia, where it also is domiciled and maintains its principal place of business. Although several of the plaintiff's manufacturing facilities are located in Georgia, the plaintiff markets and sells its products throughout the United States and abroad. The insurance policies at issue in this appeal were purchased in Georgia from the plaintiff's Georgia insurance broker. The action that gave rise to the present litigation was brought by Milliken against the plaintiff in the United States District Court for the Southern District of New York. See footnote 4 of this opinion.

The trial court concluded that, pursuant to the Restatement (Second) of Conflict of Laws (1971), Georgia law should be applied in the present case. In reaching this conclusion, the trial court looked to the presumption contained in § 193 of the Restatement (Second) of Conflict of Laws that, unless application of the various factors set forth in § 6 of the Restatement (Second) of Conflict of Laws indicates that some other state has a more significant relationship to the transaction and the parties, the law governing an insurance liability contract should be that of the " 'principal location of the insured risk . . . .' "[5] The trial court found that location to be Georgia, the situs of the plaintiff's corporate headquarters and, therefore, the source of

---

[5] Section 193 of the Restatement (Second) of Conflict of Laws (1971) provides: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

the plaintiff's marketing and advertising activities that formed the basis of the Milliken lawsuit. Pursuant to § 193 of the Restatement (Second), the trial court then evaluated the factors contained in § 6 (2) of the Restatement (Second) in order to determine whether Connecticut had a more significant nexus to the underlying action.[6] The trial court concluded that Connecticut did not have a more significant relationship to the issues in this case and that the presumption of § 193 of the Restatement (Second), therefore, was properly applicable. Accordingly, the trial court ruled that Georgia law should govern the substantive issues in this case.

The plaintiff claims that the trial court improperly determined that Georgia is the principal location of the insured risk in this case. Specifically, the plaintiff claims that because the Milliken action alleged copyright infringement and unfair and anticompetitive trade practices that occurred throughout the United States and abroad in the course of the plaintiff's business, the principal location of the insured risk is not located in Georgia but, instead, is spread throughout all the locations where the plaintiff conducts its business. We conclude that, notwithstanding whether Georgia is the principal location of the insured risk, the general presumption for contracts contained in § 188 (3) of the

---

[6] Section 6 of the Restatement (Second) of Conflict of Laws (1971) provides: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

Restatement (Second) of Conflict of Laws (1971)[7] compels the same conclusion, namely, that Georgia law is applicable to the substantive issue in this case.

In *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 413, 703 A.2d 1132 (1997), on appeal after remand, 252 Conn. 774, 750 A.2d 1051 (2000), we abandoned the ancient lex loci contractus approach to choice of law, which looked primarily to the law of the state in which the contract was made. In its place, we adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws, for analyzing choice of law issues[8] involving contracts. Id.

The starting point under the "most significant relationship" approach is § 188 of the Restatement (Second) of the Conflict of Laws, which provides in relevant part: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue,

---

[7] Section 188 of the Restatement (Second) of Conflict of Laws (1971) provides: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189—199 and 203."

[8] It is undisputed that none of the insurance policies at issue included a choice of law provision.

has the most significant relationship to the transaction and the parties under the principles stated in § 6."

We stated in *Reichhold Chemicals, Inc.*, that "[§] 6 (2) of the Restatement (Second) [of Conflict of Laws], which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the 'most significant relationship': '(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.'

"Section 188 (2) [of the Restatement (Second) of Conflict of Laws] lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute: '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.' " *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 409–10. Section 188 (3) of the Restatement (Second) establishes a general presumption with regard to contracts, namely, that "[w]hen the place of negotiation and the place of performance are in the same state, the local law of this state will usually be applied . . . except when the principles stated in § 6 require application of some other law." 1 Restatement (Second), supra, § 188, comment (f), pp. 582–83. In adopting § 188 of the Restatement (Second) in *Reichhold Chemicals, Inc.*, we described it as creating a presumption in favor of the application of the law of the state where "the bulk of the contracting

transactions took place . . . ." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 414.

In the present case, the trial court found that the contract was entered into in Georgia by the plaintiff and a representative of the defendant. Furthermore, as the trial court noted, Georgia is the place of performance of the contract because the plaintiff's headquarters, and several of the plaintiff's manufacturing facilities, are located there. Finally, the policies at issue contain endorsements specifically required by, and enforceable under, Georgia law, a further indication that performance of the insurance policies was to be in Georgia. These factors indicate that, for the purpose of the § 188 (3) presumption, "the bulk of the contracting transactions" took place in Georgia, and that the law of that state should apply. Id. The law of Georgia, therefore, presumptively should be applied unless "the principles stated in § 6 require application of some other law." 1 Restatement (Second), supra, § 188, comment (f), p. 583.

The issue that we must decide next, therefore, is whether the factors set forth in § 6 of the Restatement (Second) of Conflict of Laws compel the conclusion that Connecticut has a more significant relationship to this dispute than Georgia such that the presumption in favor of the application of Georgia law would be overcome. We conclude that Connecticut's relationship to the dispute in this case is not more significant than that of Georgia.

We begin our analysis with an examination of the relevant policies of Connecticut under § 6 (2) (b) of the Restatement (Second) of Conflict of Laws, which is the factor upon which the plaintiff primarily relies to support its argument that Connecticut has the most significant relationship to this dispute. Specifically, the plaintiff argues that Connecticut has an interest in

applying its law of notice with regard to insurance contracts in order to protect the "justified expectations" of policyholders who purchase insurance policies from Connecticut insurance companies. Connecticut notice law is more lenient than, and thus is in conflict with, Georgia law on this issue.[9]

The law of notice, however, is irrelevant to the substantive issue in this appeal. As the trial court correctly noted, the issue that we must decide is whether the insurance policies at issue provide reimbursement for pre-tender expenses, *not* whether an insured, by providing late notice, has forfeited its right to liability coverage pursuant to those policies. The Connecticut authority cited by the plaintiff relates only to the notice issue.[10] Apparently, the issue of reimbursement for pre-tender expenses, would present a question of first impression under the law of Connecticut. The conflict that the plaintiff asserts exists between the law of Connecticut and the law of Georgia on this issue, therefore, is illusory.

Moreover, even if Connecticut's law on the issue of pre-tender expenses were more favorable to the plaintiff than the law of Georgia, Connecticut's interest is limited by the fact that its only contact with this dispute under § 188 (2) of the Restatement (Second) of Conflict of Laws is the defendant's incorporation in this state. As we previously concluded herein, all of the other contacts to be considered under § 188 (2) are with Georgia. We conclude, therefore, that, under § 6 (2) (b) of the

[9] In the context of *liability* coverage, Connecticut, unlike Georgia, permits an insured to prove that an insurer was not prejudiced by the insured's lack of compliance with the notice provisions of an insurance policy. See *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 417–18, 422.

[10] See *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 414, 417–18; *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 415–16, 538 A.2d 219 (1988).

Restatement (Second) of Conflict of Laws, Connecticut does not have an interest in this litigation sufficient to override the presumption in favor of the applicability of Georgia law.

We next turn to a consideration, under § 6 (2) (d) of the Restatement (Second), of the protection of the parties' justified expectations. This factor is of particular importance in the realm of contract law. See 1 Restatement (Second), supra, § 188, comment (b), p. 576. There is strong evidence in the present case that the parties expected Georgia law to govern the interpretation and enforcement of the insurance policies at issue. Each policy contained endorsements specifically required by, and enforceable under, the law of Georgia. Moreover, noticeably absent from the policies was any reference to the law of Connecticut. Accordingly, it is reasonable to infer that the parties understood that, as a general matter, Georgia law would control any potential disputes regarding the policies. This fact supports, rather than defeats, the § 188 presumption that Georgia law should be applied to the substantive issue in this case.

Our conclusion that the parties expected Georgia law to be controlling informs our analysis under § 6 (2) (e) and (f) of the Restatement (Second) of Conflict of Laws. We address those provisions in turn.

Section 6 (2) (e) of the Restatement (Second) requires that we consider "the basic policies underlying the particular field of law . . . ." The commentary to § 188 of the Restatement (Second), indicates that "[p]rotection of the justified expectations of the parties is the basic policy underlying the field of contracts," for the purpose of § 6 (2) (e) of the Restatement (Second). 1 Restatement (Second), supra, § 188, comment (b), p. 577. Thus, this factor also supports the presumption that Georgia law is applicable. Additionally, protection

of justified expectations is also relevant to the factor of certainty, predictability, and uniformity of result under § 6 (2) (f) of the Restatement (Second). "The need for protecting the expectations of the parties gives importance in turn to the values of certainty, predictability and uniformity of result. For unless these values are attained, the expectations of the parties are likely to be disappointed." Id., pp. 576–77. This factor also provides no support for the proposition that Connecticut has a more significant relationship with this dispute than Georgia.

Finally, under § 6 (2) (g) of the Restatement (Second), which requires that we consider "ease in the determination and application of the law to be applied," there exists no burdensome administrative difficulty in the application of Georgia law sufficient to compel the application of Connecticut law. "This is not an area of the law in which [the] court might find itself grappling with numerous conflicting and subtly differing bodies of law." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 422.[11]

An analysis of the factors contained in § 6 (2) of the Restatement (Second), therefore, leads us to conclude that the trial court properly determined that Connecticut has no interest in this dispute sufficient to trump the presumption that Georgia law applies to the substantive issue in this case.

II

We now turn to the substantive issue presented by this appeal, namely, whether, under Georgia law, the

[11] We stated in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 419 n.14, that "[n]ationwide uniformity of insurance contract interpretation is an illusory goal, not truly achievable or necessarily preferable . . . ." (Citation omitted.) Accordingly, we have not addressed "the needs of the interstate and international systems" under § 6 (2) (a) of the Restatement (Second).

plaintiff is entitled to be reimbursed by the defendant for expenses the plaintiff incurred in defending the federal action brought against it by Milliken. We conclude that, pursuant to established Georgia law, the plaintiff is not entitled to reimbursement for such expenses.

We begin by setting forth the applicable standard of review. Construction of a contract of insurance is an issue of law; accordingly, our review is de novo. *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 507, 789 A.2d 974 (2002). Under Georgia law, "[t]he duty of an insurer to defend its insured is determined by the contract of insurance. . . . We therefore must look to the [policies at issue] to determine if the [plaintiff's] coverage may be deemed to include pre-tender legal expenses." *O'Brien Family Trust* v. *Glen Falls Ins. Co.*, 218 Ga. App. 379, 380, 461 S.E.2d 311 (1995).

The following additional facts are necessary to our resolution of this issue. The plaintiff purchased five, one year insurance policies from the defendant between July 1, 1986, and July 1, 1991. Pursuant to these policies, the plaintiff claims a right to reimbursement for pre-tender expenses associated with the Milliken action. The Milliken action was brought against the plaintiff in March, 1990, and was settled in September of that year. The plaintiff alleged that it had incurred more than $330,000 in defending Milliken's action for copyright infringement and unfair and anticompetitive trade practices in the design, sale, and manufacture of certain office carpeting products. At no time during the pendency of the litigation did the plaintiff inform the defendant of the lawsuit or tender defense of the lawsuit to the defendant. In March, 1991, the plaintiff contacted the defendant's agent regarding reimbursement of defense costs, which the defendant denied were available pursuant to the insurance policies. The plaintiff claims that because the Milliken action alleged an "advertising injury" within the meaning of the policies

issued by the defendant, the defendant, as part of its duty to defend the plaintiff pursuant to those policies, must reimburse the plaintiff for expenses it incurred in defending the Milliken action.

The first two of the insurance policies, which were issued in 1986 and 1987, included a section entitled "PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE," and provided in relevant part: "(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or *advertising injury* to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business . . . and *the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury . . . .*" (Emphasis added.) The remaining three policies, which were issued in 1988, 1989, and 1990, respectively, contained functionally equivalent provisions.

The defendant contends that the plaintiff is not entitled to reimbursement for pre-tender expenses because the plaintiff failed to comply with its obligations pursuant to certain provisions set forth in the policies. Those provisions, as set forth in the first two policies purchased by the plaintiff and captioned "Insured's Duties in the Event of an Occurrence, Claim or Suit," provided in relevant part: "(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

"(c) . . . *The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense* other than for first aid to others at the time of accident." (Emphasis added.)

The other three policies at issue contain analogous provisions. In addition, those policies further require that the insured provide prompt written notice of any claim or lawsuit to the defendant.

The defendant claims that, because the plaintiff (1) failed to forward the lawsuit papers to the defendant immediately after being served with them, and (2) incurred expenses in defending the Milliken action without the defendant's consent, the defendant is not obligated to reimburse the plaintiff for those expenses. We agree.

Two appellate decisions decided under Georgia law have addressed the precise issue in this case, namely, whether an insured may recover costs incurred in defending a lawsuit prior to tender of the defense of the lawsuit to the insurer. These cases have established a rule that an insurer's duty to defend is not triggered until the insured complies with the provisions in the insurance policy regarding tender of the defense of the lawsuit to the insured, and have concluded that costs incurred by the insured prior to such compliance are not recoverable pursuant to the policy.

In *O'Brien Family Trust* v. *Glen Falls Ins. Co.*, supra, 218 Ga. App. 379, the Georgia Court of Appeals analyzed a claim for pre-tender expenses based on a commercial general liability policy that contained language similar to the policies presently at issue. The plaintiffs in *O'Brien Family Trust* had incurred substantial expenses in defending over a four year period a lawsuit that had been brought against them. Id., 380. Prior to the resolution of the lawsuit, the plaintiffs tendered the defense of the case to the defendant insurance company. Id., 379–80. Although the defendant thereafter defended the lawsuit to its conclusion, the defendant refused to reimburse the plaintiffs for expenses they had incurred in defending the lawsuit prior to the time

that defense of the lawsuit was tendered to the defendant. Id. The plaintiffs thereafter brought an action against the defendant in which it sought reimbursement for those pre-tender expenses. Id., 380.

The Georgia Court of Appeals concluded that the defendant was not obligated to reimburse the plaintiffs for expenses they incurred before defense of the lawsuit was tendered to the defendant. Id., 381. The court found that the plaintiffs had not complied with conditions set forth in the policy requiring them to provide the defendant with written notice of the lawsuit and immediately to send the defendant " 'every demand, notice, summons or other papers received' " in any lawsuit filed against them. Id., 380. Because of the plaintiffs' lack of compliance with these conditions of the policy, the defendant was not required to reimburse the plaintiffs for any pre-tender expenses. Id., 381. The court stated that the opposite result would "render contractual terms necessary to trigger [the defendant's] performance under the policy meaningless." Id.

The issue of reimbursement for pre-tender expenses under the law of Georgia was next addressed by the United States Court of Appeals for the Eleventh Circuit in *Elan Pharmaceutical Research Corp.* v. *Employers Ins. of Wassau*, 144 F.3d 1372 (11th Cir. 1998). In that case, the plaintiff had been named in a federal patent infringement action, along with its parent company, and had tendered the defense of a lawsuit to the defendant insurance company approximately two months after the federal action was initiated. Id., 1374. At that time, the defendant refused to provide the plaintiff with a defense. Id. Following a favorable disposition of the lawsuit, the plaintiff brought an action against the defendant, claiming that the defendant had breached its duty to defend, and sought reimbursement for costs it had incurred in defending the underlying action. Id.

The United States Court of Appeals concluded that the defendant had breached its duty to defend the plaintiff. Id., 1381. Relying upon the decision of the Georgia Court of Appeals in *O'Brien Family Trust*, however, the federal court limited the defendant's liability to defense costs incurred *after* the plaintiff's tender of the defense of the lawsuit. Id., 1382. The court noted that the language of the policy at issue in *Elan Pharmaceutical Research Corp.*, which required the insured to provide notice of any lawsuit " 'as soon as practicable' " and forward all lawsuit papers to the defendant "immediately"; id.; was "similar to [the language of] the policy at issue in *O'Brien [Family Trust]* in all salient respects." Id., 1381. Accordingly, the United States Court of Appeals held that, because the defendant's duty to defend the plaintiff was not triggered until the tender of the defense of the lawsuit to the defendant, the defendant was not obligated under the policy to reimburse the plaintiff for defense costs it had incurred in the two months preceding the plaintiff's tender of the defense. Id., 1382.

The pertinent sections of the policies at issue in the present case are virtually identical, in both language and import, to those portions of the policies that the courts in *O'Brien Family Trust* and *Elan Pharmaceutical Research Corp.* found to be controlling. More specifically, the language of the policies in the present case is identical to the language of the policies in *O'Brien Family Trust* and *Elan Pharmaceutical Research Corp.* in two important respects. The policies here require that the insured: (1) forward legal papers related to claims or lawsuits "immediately" to the insurer; and (2) provide written notice of lawsuits or claims to the insurer "as soon as reasonably possible" or "as soon as practicable." It is undisputed that, in the present case, the plaintiff did not comply with these conditions until some six months following the resolution of the

Milliken action. Pursuant to the rule set forth in *O'Brien Family Trust* and applied in *Elan Pharmaceutical Research Corp.*, namely, that an insurer's duty to defend a lawsuit is not triggered until these conditions are complied with, and that an insured is precluded from recovering any expenses incurred in defending a lawsuit prior to such compliance, we conclude that the trial court properly determined that the defendant in the present case is not liable for costs the plaintiff incurred in defending the Milliken action.

Our conclusion is buttressed by the language in the insurance policies that provides that an insured shall assist in the conduct of any lawsuits only "at the [insurer's] request," and that the insured shall not voluntarily make any payment or incur any expense, other than for first aid, "except at [the insured's] own cost . . . ." The policy thus specifically defines the circumstances under which an insured may participate in the defense of a lawsuit or incur costs in such defense. It is undisputed that the defendant in this case did not request that the plaintiff assist in the defense of the Milliken action, that the plaintiff did not obtain the defendant's consent before incurring expenses in defending the Milliken action, and that none of the expenses incurred by the plaintiff were for "first aid . . . ."

The plaintiff, by defending the action without the consent of the defendant, clearly acted in contravention of the policy provisions by failing to obtain the defendant's consent before incurring expenses in defending the Milliken action. Thus, according to the plain language of the policies, such costs must be borne by the plaintiff. Allowing the plaintiff to recover defense costs under these circumstances would render these provisions a nullity, a result squarely at odds with controlling Georgia authority. See *O'Brien Family Trust* v. *Glen Falls Ins. Co.*, supra, 218 Ga. App. 381.

The plaintiff contends that, notwithstanding its failure to comply with the conditions of the policies, the trial court improperly rendered summary judgment in favor of the defendant because genuine issues of material fact exist as to whether: (1) the defendant had notice of the Milliken suit; (2) the plaintiff was excused from giving proper notice; and (3) the defendant was prejudiced by the lack of proper notice. We disagree.

The Georgia Court of Appeals squarely rejected a similar argument in *O'Brien Family Trust*. In that case, the plaintiffs argued that the trial court improperly rendered summary judgment in favor of the defendant insurer because the defendant had conceded that a genuine issue of material fact existed as to whether it had notice of the underlying lawsuit. Id. In rejecting that argument, the court stated that, even if such an issue of fact existed, the judgment of the trial court nevertheless would be affirmed because "the question of whether or when [the defendant insurer] was notified of the [plaintiffs'] claim for legal expenses *is not relevant to the question of whether such expenses were covered by the policy.*" (Emphasis added.) Id. The notice arguments that the plaintiff raises in the present case, therefore, are inapposite to the issue at hand.

The judgment is affirmed.

In this opinion the other justices concurred.