******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AMICA MUTUAL INSURANCE COMPANY *v.* BRYAN PIQUETTE ET AL.
## (AC 38846)

Sheldon, Beach and Harper, Js.

*Syllabus*

The plaintiff insurance company sought a declaratory judgment to determine the scope of coverage provided under an automobile insurance policy it had issued to the defendant B. The defendant P and his wife, the defendant R, previously had commenced a negligence action against B in connection with an automobile accident in which B's automobile collided with a motorcycle operate by P, pursuant to which P sought damages for bodily injury and R sought damages for loss of consortium. The declaration section of the insurance policy provided liability limits for bodily injury of a certain amount per person, and a separate limit per accident. R maintained that her loss of consortium claim should be considered separately from P's bodily injury claim for the purpose of the per person limitation. The plaintiff thereafter brought the present declaratory judgment action seeking a determination of the proper scope of coverage provided by the policy. Subsequently, the plaintiff filed a motion for summary judgment, and in support thereof, relied on *Izzo* v. *Colonial Penn Ins. Co.* (203 Conn. 305), which held that, under the terms of the insurance policy at issue in that case, an uninjured spouse's claim for loss of consortium is derivative of the injured spouse's claim for bodily injury and, therefore, does not trigger a separate per person limit under the terms of that policy. The trial court granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which R appealed to this court. R claimed that *Izzo* was inapplicable because the policy language at issue here differed from that in *Izzo* and that any ambiguity should be construed in favor of coverage. *Held* that the trial court properly rendered summary judgment in favor of the plaintiff and correctly applied *Izzo* to the present case; although the policy here provided coverage for damages "arising out of" bodily injury, whereas the policy at issue in *Izzo* provided coverage for damages "because of" bodily injury, the slight differences in policy language between those policies did not create an ambiguity that required the policy in the present case to be construed against the plaintiff as the drafter, as both policies referred to claims that flow from and are derivative of the bodily injury sustained by another person, the derivative nature of the loss of consortium claim, which is inextricably attached to the claim of the injured spouse, required coverage under the same per person limitation as the injury from which it flowed under the policy language in the present case, and, therefore, in the absence of policy language providing per person coverage for a broader category of claims or expressly providing separate coverage for loss of consortium claims, R's claim for loss of consortium was encompassed in the per person liability limitation applicable to P's bodily injury claim from which it arose.

Argued April 20—officially released September 19, 2017

*Procedural History*

Action for a declaratory judgment to determine the scope of coverage under an automobile insurance policy for damages sustained by the named defendant et al. arising from an automobile accident involving the plaintiff's insured, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Scholl, J.*, granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which the defendant Rebecca Piquette appealed to this court. *Affirmed*.

*Allan M. Rothenberg*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellant (defendant Rebecca Piquette).

*Philip T. Newbury, Jr.*, with whom was *Julia E. Lavine*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant Rebecca Piquette[1] appeals from the trial court's summary judgment rendered in favor of the plaintiff, Amica Mutual Insurance Company, in this declaratory judgment action brought to determine the proper scope of coverage provided by an automobile insurance policy issued by the plaintiff. The critical question in this appeal is whether, under the terms of an automobile insurance contract providing coverage for bodily injury, a loss of consortium claim is entitled to a separate per person liability limitation from the principal bodily injury claim of another person from which the loss of consortium claim arises. The defendant argues that the trial court's ruling was improper because the language of the policy at issue is ambiguous and the matter should be remanded for further proceedings to determine the scope of the policy. For the reasons that follow, we conclude that the resolution of this appeal is controlled by our Supreme Court's decision in *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 524 A.2d 641 (1987), and, accordingly, affirm the judgment of the trial court, which properly applied *Izzo*.

The following undisputed facts and procedural history give rise to the present appeal. At all relevant times, an individual named Rebecca Bahre[2] was the holder of an automobile insurance policy issued by the plaintiff. The declaration section of this policy provided liability limits for bodily injury of $100,000 per person and a total limit of $300,000 per accident for bodily injury. The policy further provided that this limit of liability is the plaintiff's "maximum limit of liability for all damages including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident."

On June 27, 2012, this policy was in effect when a vehicle operated by Bahre collided with a motorcycle operated by the defendant's husband, Bryan Piquette (husband). As a result of this collision, Piquette suffered physical injuries. The defendant was not present at the time of the collision and did not witness it. On July 23, 2013, by service of process, the defendant and her husband commenced an action against Bahre, raising claims for bodily injury suffered by the defendant's husband and for loss of consortium suffered by the defendant as a result of her husband's physical injuries. On December 4, 2013, Bahre, with her insurer, offered to settle all claims for a total sum of $100,000, inclusive of all costs and interest. This amount represented the full per person limit of coverage for bodily injury. Through counsel, the defendant and her husband counteroffered to settle the matter for a total sum of $200,000. The counteroffer was based on the assertion that the defendant's loss of consortium claim was entitled to a separate per person limit of $100,000 from

the $100,000 per person limit covering her husband's bodily injuries.

Thereafter, the plaintiff commenced the present declaratory judgment action to determine the proper scope of coverage provided by the policy. The plaintiff asserted that a claim for loss of consortium is derivative of the bodily injury claim brought by the defendant's husband, who was directly and physically injured in the collision, and, therefore, the loss of consortium claim is not entitled to a separate per person limit of liability. Accordingly, the plaintiff asserted that its maximum liability under the policy for the defendant's loss of consortium claim *and* her husband's corresponding bodily injury claim was a total of $100,000.

On July 29, 2015, the plaintiff moved for summary judgment on the ground that there was no genuine issue of material fact regarding the scope of the policy under its unambiguous terms, and that the plaintiff was entitled to judgment as a matter of law. The plaintiff relied on *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 305, which held that, under the terms of the insurance policy at issue in that case, an uninjured spouse's claim for loss of consortium is derivative of the injured spouse's claim for bodily injury, and, therefore, does not trigger a separate per person limit under the terms of that policy. The plaintiff argued that the policy language in the present case is substantially the same as that presented in *Izzo*, and, accordingly, that *Izzo* was controlling. The defendant responded that the policy language in the present case was ambiguous and substantively distinguishable from the language in *Izzo*, and that summary judgment, therefore, was inappropriate.

On January 14, 2016, the trial court granted summary judgment for the plaintiff. The court concluded that the policy language was not ambiguous or substantively distinguishable from the language in *Izzo*. Accordingly, the trial court concluded that it was bound by our Supreme Court's holding in *Izzo* that the policy language did not create a separate per person limitation of liability for one spouse's claim for loss of consortium that was derivative of an injured spouse's claim for bodily injury. This appeal followed.

On appeal, the defendant argues that the trial court erred in granting summary judgment for the plaintiff. She argues that significant differences exist between the policy language at issue here and the policy language construed in *Izzo*, such that *Izzo* is inapplicable. She argues that wording of the policy is ambiguous and, as such, the policy should be construed against the plaintiff, in favor of coverage, in accordance with established principles of insurance contract interpretation. The plaintiff responds that the trial court properly concluded that this matter is controlled by *Izzo* and properly granted summary judgment. We agree with the

plaintiff.

We begin with the standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits, and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Dairyland Ins. Co.* v. *Mitchell*, 320 Conn. 205, 210, 128 A.3d 931 (2016). Disputes over insurance coverage are well suited to summary judgment because the interpretation of an insurance contract is a question of law. See, e.g., *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 37, 84 A.3d 1167 (2014); *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, 261 Conn. 601, 614, 804 A.2d 201 (2002). Our review of a trial court's conclusions of law is plenary and we must determine whether the conclusions reached by the trial court are legally and logically correct and find support in the facts in the record. *Dairyland Ins. Co.* v. *Mitchell*, supra, 210.

Similarly, "[c]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 88–89, 961 A.2d 387 (2009).

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construc-

tion may not be applied, however, unless the policy terms are indeed ambiguous." (Internal quotation marks omitted.) Id., 89; see also *Zulick* v. *Patrons Mutual Ins. Co.*, 287 Conn. 367, 373, 949 A.2d 1084 (2008).

We disagree with the defendant's assertion that the slight differences in policy language between the disputed policy here and the policy at issue in *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 307, create ambiguity that requires the policy to be construed against the plaintiff as the drafter under established principles of insurance contract interpretation. The policy interpreted in *Izzo* provided coverage for damages "*because of* bodily injury"; (emphasis altered) id., 309; while the policy at issue here provides coverage for damages "*arising out of* bodily injury." Principally, the defendant argues that the latter language does not require the direct causal relationship indicated by the phrase "because of" that was used in *Izzo*, and that, accordingly, it was improper for the trial court to rely on *Izzo* to determine the limits of liability in the present case. The defendant's interpretation tortures the language of the policy in order to find ambiguity where there is none. We conclude, on the facts present here, that this slight variation in policy language is a distinction without a difference.

The resolution of this appeal, therefore, turns on our Supreme Court's construction of substantively similar policy language in *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 307. Indeed, the facts of *Izzo* are remarkably similar to those of the present appeal. In *Izzo*, a woman suffered permanent and disabling injuries, including the loss of a leg, in an automobile accident caused by another driver. Id. Although the injured woman's husband was not involved in the accident, he claimed that he suffered a loss of consortium as a result of the injuries to his wife. Id. The decision in *Izzo* arose from a declaratory judgment action regarding these claims to determine, under the terms of an insurance contract owned by the driver that caused the accident, whether separate liability limitations applied to each claim or whether the derivative loss of consortium claim was covered by the same limitation.

The driver that caused the accident in *Izzo* held an insurance policy that provided liability limitations for bodily injury of $100,000 "per person" and $300,000 "per occurrence." Id., 308. The policy's liability limitations for bodily injury provided that, "for 'Each Person' [$100,000] is the most [w]e'll pay for damages because of bodily injury to one person caused by any one occurrence. The amount shown on your Declarations Page for 'Each Occurrence' [$300,000] is the most we'll pay for all damages as a result of any one occurrence, no matter how many people are injured." (Emphasis omitted.) Id., 309. Additionally, the policy specified that cov-

erage for bodily injury includes "damages for the loss of an injured person's services." Id., 309 and n.4. These policy terms are substantively similar to the terms of the policy at issue in the present appeal.[3] The parties in *Izzo* did not dispute that this language expressly provided coverage for loss of consortium claims. The dispute in *Izzo*, as in the present case, was whether the husband's loss of consortium claim was entitled to a separate per person liability limitation from the wife's bodily injury claim, which would have resulted in a total maximum recovery for both claims of $200,000. Id., 308.

The court in *Izzo* identified the critical question as whether the loss of consortium claim arose "out of bodily injury sustained by 'one person' so as to make the 'per person' limit applicable, or is [a loss of consortium claim] a claim for *bodily injury* to a second person such as to invoke the 'per occurrence' limit." (Emphasis added.) Id., 309. The court concluded that the derivative nature of a loss of consortium claim caused it to be "inextricably attached" to the bodily injury claim and therefore covered by the same per person limitation under the policy language at issue, which did not expressly provide separate coverage for loss of consortium claims. Id., 312. The court explained that "[a] cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss of consortium; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. . . . [A]lthough loss of consortium is a separate cause of action, it is an action [which] is derivative of the injured spouse's cause of action. . . . Loss of consortium . . . is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse. The [husband's] loss of consortium claim, therefore, clearly fits within the 'per person' limit [covering the wife's bodily injury claim] as [the husband's claim] is a loss sustained 'because of bodily injury to one person [the wife] caused by any one occurrence.' " (Citations omitted.) Id., 312.

After careful consideration of the trial court's decision in the present case, we conclude that it correctly applied *Izzo*. As noted previously, there is no meaningful difference between the language of these two policies. There is no question that both policies cover loss of consortium claims, and neither policy expressly provides separate per person coverage for loss of consortium claims. In *Izzo*, the per person limitation of liability applied to "damages *because of* bodily injury to one person caused by any one occurrence." (Emphasis altered; internal quotation marks omitted.) Id., 309. Here, the policy's per person limitation of liability applies to "damages . . . *arising out of* bodily injury sustained by any one person in any one auto accident." (Emphasis added.) It is clear that both policies refer to claims that flow from and are derivative of the bodily

injury sustained by another person. In light of our Supreme Court's decision in *Izzo*, it is equally clear that the derivative nature of the loss of consortium claim requires coverage under the same per person limitation as the injury from which it flows under the policy language present here.

Our conclusion in this appeal, as in *Izzo*, is driven largely by the nature of a loss of consortium claim, which is "not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse." *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 312. When *Izzo* was decided, loss of consortium only recently had been recognized as a cause of action in Connecticut. See *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 496, 408 A.2d 260 (1979) (recognizing loss of consortium as independent cause of action). However, from the earliest days of its recognition in Connecticut, the derivative nature of a loss of consortium claim has been clear, and it was held that the settlement of the bodily injury claim from which the loss of consortium claim arose acted to extinguish the loss of consortium claim. See *Voris* v. *Molinaro*, 302 Conn. 791, 798–801, 31 A.3d 363 (2011) (discussing policy rationale for extinguishing loss of consortium claim upon settlement of principal injury claim regardless of status of the derivative claim). In the absence of policy language providing per person coverage for a broader category of claims[4] or expressly providing separate coverage for loss of consortium claims, we must conclude that a loss of consortium claim is encompassed in the per person liability limitation applicable to the bodily injury from which it arises.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The named defendant, Bryan Piquette, settled his claim with the plaintiff during the pendency of this appeal. Bryan Piquette is therefore not participating in this appeal and all references to the defendant refer to his wife, Rebecca Piquette.

[2] Bahre is also named as a defendant in this matter, but did not enter an appearance and is not participating in this appeal.

[3] As previously noted, the policy at issue in the present action provided that the plaintiff's "maximum limit of liability for all damages including damages for . . . loss of services . . . arising out of bodily injury sustained by any one person in any one auto accident" is $100,000.

[4] The court in *Izzo* noted that in jurisdictions where a loss of consortium claim has been found to be subject to a separate per person limitation of liability, the policies at issue covered "personal injury" claims rather than "bodily injury" claims, which are not synonymous. "[T]he policy term 'personal injuries' is 'broader, more comprehensive and significant' than the term 'bodily injury.' . . . The term 'personal injury' is broad enough to encompass a claim for injury which is personal to the claimant, although flowing from the physical injury of another. . . . [T]he term 'bodily injury,' however, is narrower in that it connotes an element of personal contact. . . . A claim for loss of consortium, although a 'personal injury,' is not a 'bodily injury' to the claimant." (Citations omitted.) *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 313.