246 N.J. Super. 503 (1990)
588 A.2d 385
HARLEYSVILLE INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
CRUM & FORSTER PERSONAL INSURANCE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 21, 1990.
Decided December 19, 1990.
*504 Before Judges GAULKIN and HAVEY.
Methfessel & Werbel, attorneys for appellant (Joel N. Werbel, on the brief).
Paul Seligman, attorney for respondent.
PER CURIAM.
This is a dispute between two insurance carriers concerning their respective liabilities arising out of an automobile accident. On the parties' cross-motions for summary judgment, the motion judge granted summary judgment in favor of defendant Crum & Forster Personal Insurance (Crum & Forster). Plaintiff Harleysville Insurance Company (Harleysville) appeals.
In September 1986, Eugene Friedman, a Florida resident, came to New Jersey to sell a condominium he owned. While here, he took his 1984 Mercedes to Coast Imported Car Corporation (Coast) for repair work. Coast ordinarily provided van service for customers leaving their cars for repair. The van *505 was unavailable when Friedman delivered his car, so Donald Krause, a Coast employee, drove Friedman in Friedman's car to the hospital where Friedman's daughter worked. During that journey, Krause was involved in an accident in Dover Township with an automobile driven by Sharon McIntyre. McIntyre and her husband sued Friedman, Krause and Coast. Friedman's defense was handled by Crum & Forster, which had issued a personal automobile policy on the Mercedes. Crum & Forster, however, disclaimed coverage as to Krause and Coast under the Friedman policy; Krause and Coast thus were represented through Harleysville, which had issued a garage policy to Coast.
While the McIntyres' action was pending, Harleysville filed this action seeking declaratory judgment that Crum & Forster's policy provided primary insurance coverage to Krause. The two carriers jointly agreed to settle the McIntyre claims for $35,000 and further agreed between themselves that Harleysville would pay the settlement without prejudice to its claim against Crum & Forster.
The dispute arises out of the "shop rule exclusion" incorporated in the Crum & Forster policy, which excludes liability coverage for any person
6. While employed or otherwise engaged in the business or occupation of
a. selling;
b. repairing;
c. servicing;
d. storing; or
e. parking;
vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of your covered auto by
a. you;
b. any family member; or
c. any partner, agent or employee of you or any family member.
*506 The motion judge held that Florida law was applicable because Friedman "at the time in question was a resident of Florida."[1] Under Florida law, the judge found, the policy exclusion became operative once Friedman delivered his car to Coast. On this appeal, Harleysville urges that New Jersey law should have been applied, that the policy exclusion is invalid under New Jersey law and that even under Florida law the exclusion is not available in the factual setting shown here.
We find it unnecessary to determine whether the exclusionary clause would apply under Florida law, for we are satisfied that New Jersey law should be applied and that the exclusion is void as a matter of New Jersey law.
State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. 28, 417 A.2d 488 (1980) provides the analytic framework for our resolution of the conflict of laws issue:
... [T]he law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law [citations omitted]. At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.
* * * * * * * *
We thus hold that, in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.
Id. at 37, 417 A.2d 488.
In determining whether a state other than the place of the contract has some "dominant and significant relationship," the *507 Supreme Court suggested that the following general factors, drawn from Restatement (Second) of Conflict of Laws, § 6 (1971), be considered:
(1) the needs of the interstate and international system, (2) the relevant policies of the forum, (3) the relevant policies of other affected states and the relevant interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied.
Id. at 34, 417 A.2d 488. See also Restatement, supra, §§ 188, 193; Colonial Penn Ins. Co. v. Gibson, 230 N.J. Super. 55, 58, 552 A.2d 644 (App.Div. 1989).
The relevant policies of New Jersey (Restatement, supra, § 6(2)(b)) are unmistakable and compelling. The exclusion as an additional insured of any person employed or otherwise engaged in duties in connection with an automobile business "violates the clear public policy of this State and any policy provision containing such exclusion is void." American Home Assur. Co. v. Hartford Ins. Co., 190 N.J. Super. 477, 486, 464 A.2d 1128 (App.Div. 1983); see also Unsatisfied Claim & Judgment Fd. Bd. v. Clifton, 117 N.J. Super. 5, 8-10, 283 A.2d 350 (App.Div. 1971). The relevant policies of Florida (Restatement, supra, § 6(2)(c)), on the other hand, are somewhat equivocal. See Michalek v. Shumate, 524 So.2d 426 (Fla. 1988); Castillo v. Bickley, 363 So.2d 792 (Fla. 1978); Grilli v. Le-Bo Properties Corp., 553 So.2d 352 (Fla.App. 2 Dist. 1989). If in fact Florida law would deny coverage to Krause under the Friedman policy, that law would be "offensive or repugnant to local public policy." State Farm, supra, 84 N.J. at 41, 417 A.2d 488.
With respect to the relative interests of New Jersey and Florida in the determination of the issue (Restatement, supra, § 6(2)(c)), the Friedman car was temporarily garaged in New Jersey, not just "passing through"; the accident occurred as the car was being operated in New Jersey by a New Jersey resident; the injured parties were New Jersey residents; the Friedman policy was issued by a company with a home office in *508 New Jersey; the garage to which Friedman had brought his car was also in New Jersey. In our judgment, those contacts with New Jersey are far more relevant and significant in determining the choice of law than the facts that Friedman was a Florida resident, his car was principally garaged in Florida and his insurance policy was written in Florida.
Finally, application of the clear New Jersey law rather than the equivocal Florida precedents surely advances the certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied. Restatement, supra, § 6(2)(f), (g).
Our weighing of the relevant considerations thus persuades us that New Jersey has the dominant and significant relationships to the parties and to the underlying coverage issue, thus justifying application of New Jersey rather than Florida law. Under New Jersey law, Krause, the culpable driver, was insured under both the Harleysville and the Crum & Forster policies. The "other insurance" provision of the Crum & Forster policy provided:
If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
The comparable provision of the Harleysville policy provided in relevant part:
For any covered auto you don't own, the insurance provided by this endorsement is excess over any other collectible insurance.
* * * * * * * *
2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.
Crum & Forster's $500,000 coverage for the Friedman vehicle thus was primary, but only for "the proportion that our limit of liability bears to the total of all applicable limits." However, the Harleysville policy provided only excess coverage, which cannot be included in "the total of all applicable limits" *509 within the meaning of the Crum & Forster policy. See Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 561-562, 147 A.2d 529 (1959); Rutgers Cas. Ins. v. State Farm, 234 N.J. Super. 202, 207, 560 A.2d 722 (App.Div. 1989); Avemco Ins. Co. v. United States Fire Ins. Co., 212 N.J. Super. 38, 47, 513 A.2d 962 (App.Div. 1986); Keystone Ins. Co. v. Atlantic Chrysler Plymouth, 167 N.J. Super. 353, 363, 400 A.2d 872 (Law Div. 1979); Pru. Prop. Cas. Ins. Co. v. New Hamp. Ins. Co., 164 N.J. Super. 184, 189, 395 A.2d 923 (Law Div. 1978). Crum & Forster is thus obligated to reimburse Harleysville in full for the settlement proceeds paid to the McIntyres.
The November 17, 1989 summary judgment is reversed. The matter is remanded to the Law Division, Union County for entry of judgment in favor of Harleysville consistent with this opinion.
NOTES
[1] Although the trial judge did not note that Florida was the place of the contract, that appears to be undisputed.