AMERICAN STATES INSURANCE COMPANY *v.*
ALLSTATE INSURANCE COMPANY
(SC 17651)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 15—officially released May 15, 2007

*John W. Lemega*, with whom was *Aubrey E. Ruta*, for the appellant (plaintiff).

*William J. Melley III*, for the appellee (defendant).

NORCOTT, J. In this certified appeal, we apply the Restatement (Second) of Conflict of Laws principles adopted in our decision in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 703 A.2d 1132 (1997), on appeal after remand, 252 Conn. 774, 750 A.2d 1051 (2000), to determine which state's law governs an automobile liability insurance policy issued in Florida covering a car principally garaged in, and owned by a domiciliary of, that state, who was injured in an automobile accident during an extended visit with her daughter in Connecticut. The plaintiff, American States Insurance Company, appeals, upon our grant of certification,[1] from the judgment of the Appellate Court reversing the judgment of the trial court that had awarded the plaintiff the sum of $108,851.68 plus interest in the amount of $97,501.03 pursuant to General Statutes § 37-3a. *American States Ins. Co.* v. *Allstate Ins. Co.*, 94 Conn. App. 79, 81, 891 A.2d 75 (2006). On appeal, the plaintiff claims that the Appellate Court improperly concluded that the insurance policy issued by the defendant, Allstate Insurance Company, is governed by Florida, and not Connecticut, law. Because Florida has the "most significant relationship" with the contract claims in this case, we affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following undisputed facts and procedural history. "On June 14, 1994, Victoria M. O'Neill and Patricia Sargent[2] were the owners of a 1989 Ford Thunderbird. At that time, the

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that Florida law governed the interpretation of the automobile liability policy issued by the defendant?" *American States Ins. Co.* v. *Allstate Ins. Co.*, 278 Conn. 904, 905, 896 A.2d 107 (2006).

[2] "O'Neill is the mother of Sargent." *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 94 Conn. App. 81 n.1.

vehicle was registered in Florida and insured under an automobile liability insurance policy issued by the defendant. O'Neill and Sargent were named insureds under the defendant's policy, which had been purchased and issued in Florida. The premium statements for the defendant's policy were mailed to Sargent's address in Connecticut. Sargent was domiciled in Connecticut and held a Connecticut driver's license. O'Neill was domiciled in Florida but, for several years, had spent three to five months each year in Connecticut with Sargent.

"On June 14, 1994, Sargent was operating the Thunderbird in Lebanon with O'Neill as her passenger. Sargent collided with a stationary object, causing injuries to O'Neill. On November 15, 1994, O'Neill brought an action against Sargent in the Connecticut Superior Court (O'Neill action) for the injuries she sustained in the motor vehicle accident. The defendant denied coverage under its policy and refused to defend or indemnify Sargent in the O'Neill action. At that time, Sargent also was insured under a personal umbrella liability insurance policy issued by the plaintiff. The plaintiff provided a defense to Sargent in connection with the O'Neill action. The O'Neill action proceeded to arbitration, which resulted in an award to O'Neill in the amount of $122,500. The arbitration award was neither confirmed nor vacated by the Superior Court. The plaintiff paid the amount of the arbitration award to O'Neill on October 11, 1995.

"In the present action, the plaintiff sought a judgment declaring that the defendant was required to provide a defense and indemnification to Sargent, pursuant to the defendant's liability insurance policy issued to Sargent in 1994, and indemnification to the plaintiff in the amount of the payment it made to O'Neill in satisfaction of the arbitration award entered in O'Neill's favor against Sargent. The plaintiff and the defendant filed

motions for summary judgment and submitted a stipulation of facts to the court. The court, *Hon. Jerry Wagner*, judge trial referee, issued its memorandum of decision on November 13, 2003, granting the plaintiff's motion for summary judgment and denying the defendant's motion for summary judgment. After a hearing in damages, the court, *Bryant, J.*, rendered judgment awarding the plaintiff damages and interest pursuant to § 37-3a." Id., 81–83.

The defendant appealed from the judgment of the trial court to the Appellate Court and claimed, inter alia,[3] that the trial court improperly chose to apply Connecticut law rather than Florida law to the automobile liability insurance policy, which did not contain a choice of law clause. Id., 86. The distinction between Connecticut and Florida law is significant in the present case because "[t]he defendant's policy contains an endorsement that excludes automobile liability insurance coverage for 'bodily injury to you or any resident of your household related to you by blood, marriage or adoption.' The definition section of the policy defines 'you' as 'the policyholder named on the declarations page and that policyholder's resident spouse' "; id., 89–90; and "Sargent and O'Neill are both listed as policyholders on the declarations page." Id., 90. The defendant had denied coverage on the basis of this household exclu-

[3] The defendant also claimed that the trial court improperly had: "(1) determined that the plaintiff had standing to bring this action, (2) applied Connecticut law rather than Florida law in the interpretation of the insurance policy at issue, (3) determined that the defendant breached its duty to defend and (4) awarded prejudgment interest pursuant to § 37-3a." *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 94 Conn. App. 81. The Appellate Court concluded that the plaintiff had standing to bring this equitable subrogation claim against the defendant because it "did not act as a volunteer when it defended Sargent in the O'Neill action or when it paid the amount of the arbitration award to O'Neill." Id., 86. Because the Appellate Court reversed the judgment of the trial court based on the defendant's conflict of law claim, it did not reach the other issues. Id.

sion, which is valid under Florida law,[4] but was drafted in a manner that likely would not satisfy the requirements of General Statutes § 38a-335 (d), which provides in relevant part that "the coverage afforded under the bodily injury liability and property damage liability provisions in any such policy shall apply to the named insured and relatives residing in his household *unless any such person is specifically excluded by endorsement.*" (Emphasis added.) See *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 94 Conn. App. 90.

The Appellate Court, following the " 'most significant relationship' " approach taken by 1 Restatement (Second), Conflict of Laws §§ 193, 188 and 6 (1971), as adopted by our decision in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 401, concluded that Florida law governed the policy because that state was the "principal location of the insured risk" since the Thunderbird was "primarily garaged" there and was in Connecticut less than six months of the year. *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 94 Conn. App. 86–88. Noting that this created a rebuttable presumption in favor of Florida law, the Appellate Court next concluded that Connecticut's interest was not "sufficiently compelling" to outweigh Florida's interest. Id., 87–90.

Finally, the Appellate Court concluded that, "[u]nder Florida law, the defendant was not required to provide a defense and indemnification to Sargent in connection with the O'Neill action and is not required to indemnify the plaintiff for the amount of the payment it made to O'Neill in satisfaction of the arbitration award." Id., 91. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case with direction

---

[4] See *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 94 Conn. App. 90, citing, e.g., *Reid* v. *State Farm Fire & Casualty Co.*, 352 So. 2d 1172, 1173 (Fla. 1977).

to render judgment in favor of the defendant. Id. This certified appeal followed. See footnote 1 of this opinion.

On appeal, the plaintiff claims that the Appellate Court improperly concluded that the policy was governed by Florida law because the parties understood that Connecticut, and not Florida, was the "principal location of the insured risk." Specifically, the plaintiff argues that the Appellate Court gave undue consideration to the fact that the Thunderbird was garaged in Connecticut less than six months a year. The plaintiff further claims that the defendant should have foreseen that, when it issued the policy, the principal location of the risk would be in Connecticut because both O'Neill and Sargent were listed as co-owners of the car and named insureds with a Connecticut mailing address, and the premium statements were mailed to and paid from Connecticut. The plaintiff also claims that, even if Florida is the "principal location of the risk," Connecticut has a " 'more significant relationship' " to the transaction in this case because Connecticut has an overriding policy interest in applying its law requiring certain minimum coverage requirements.[5]

In response, the defendant claims that Florida law should apply presumptively because that state was the principal location of the risk as the Thunderbird had been garaged there for the majority of the year, and the policy at issue was clearly labeled as a Florida insurance policy. The defendant then contends that Connecticut's interest is not sufficiently compelling to overcome that presumption because, although their laws are different with respect to household exclusions,

---

[5] The plaintiff also argues that applying Connecticut law in this case will not affect Florida's policy interests, and emphasizes the mobile nature of the risk at issue, as well as the fact that the policy has no geographic boundaries. Finally, the plaintiff contends that, had the defendant wished Florida law to govern, it could have included in the contract a choice of law clause.

the public policies of Connecticut and Florida differ only in execution, and not substance. The defendant also emphasizes that insurance underwriting standards, which differ from state to state, reflect the costs of insuring risks under a particular state's laws. We agree with the defendant, and conclude that the Appellate Court properly determined that the policy at issue was governed by Florida law.

We note at the outset that choice of law issues present questions of law over which our review is plenary. See, e.g., *Connell* v. *Riggins*, 944 So. 2d 1174, 1176 (Fla. App. 2006); *Morris B. Chapman & Associates, Ltd.* v. *Kitzman*, 307 Ill. App. 3d 92, 99, 716 N.E.2d 829 (1999), aff'd, 193 Ill. 2d 560, 739 N.E.2d 1263 (2000); *Cudd Pressure Control, Inc.* v. *Sonat Exploration Co.*, 202 S.W.3d 901, 904 (Tex. App. 2006); *Dreher* v. *Budget Rent-A-Car System, Inc.*, 272 Va. 390, 395, 634 S.E.2d 324 (2006).

"In *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, [supra, 243 Conn. 413], we abandoned the ancient lex loci contractus approach to choice of law, which looked primarily to the law of the state in which the contract was made. In its place, we adopted the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws, for analyzing choice of law issues involving contracts." *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, 261 Conn. 601, 608, 804 A.2d 201 (2002). Thus, the "choice of law determination in this case involves an interplay among §§ 193, 188 and 6 of the Restatement (Second), supra. Where there is no choice of law provision in the contract, the general rule to be applied is that of § 188.[6] Section 188, in turn, directs us to other

[6] "The starting point under the most significant relationship approach is § 188 of the Restatement (Second) of the Conflict of Laws, which provides in relevant part: (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction

provisions for specific types of contracts. With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second), supra . . . ." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 252 Conn. 781–82.

Section 193 of the Restatement (Second) provides that " '[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.' Thus, § 193 establishes a *special presumption* in favor of application, in liability insurance coverage cases, of the law of the jurisdiction that is the principal location of the insured risk." (Emphasis added.) *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 411.

The commentary to § 193 notes that "[a]n insured risk, namely the object or activity which is the subject

and the parties under the principles stated in § 6." (Internal quotation marks omitted.) *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 261 Conn. 608–609.

Moreover, "[§] 188 (3) of the Restatement (Second) establishes a general presumption with regard to contracts, namely, that '[w]hen the place of negotiation and the place of performance are in the same state, the local law of this state will usually be applied . . . except when the principles stated in § 6 require application of some other law.' 1 Restatement (Second), supra, § 188, comment (f), pp. 582–83. In adopting § 188 of the Restatement (Second) in *Reichhold Chemicals, Inc.*, we described it as creating a presumption in favor of the application of the law of the state where 'the bulk of the contracting transactions took place . . . .' " *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 261 Conn. 609–10; id., 610 (Georgia law applied presumptively under § 188 [3] of Restatement [Second] because insurance contract was entered into in that state by plaintiff, whose headquarters and manufacturing facilities were located there).

matter of the insurance, has its principal location, in the sense here used, in the state where it will be *during at least the major portion of the insurance period.* In the great majority of instances, the term of a contract of fire, surety or casualty insurance will be relatively brief, and it will usually be possible to predict with fair accuracy where the risk will be located, or at least principally located, during the life of the policy. . . . *So, in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.*" (Emphasis added.) 1 Restatement (Second), supra, § 193, comment (b), p. 611. The Restatement (Second) considers the principal location of the insured risk to be "a matter of intense concern to the parties to the insurance contract" because "[it] has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend. So the cost of automobile liability or of collision insurance will probably be higher if the place where the automobile will be principally garaged during the term of the policy is an urban, as opposed to a rural, community." Id., § 193, comment (c), p. 612.

Cases cited by the parties and located by our independent research reveal that those courts that have adopted the Restatement (Second) approach to choice of law problems follow this commentary strictly, and hold that the principal location of the risk is determined by the location of the relevant vehicle during the majority of the contract term. We find particularly illustrative *State Farm Mutual Automobile Ins. Co.* v. *Estate of Simmons*, 84 N.J. 28, 30–31, 417 A.2d 488 (1980), wherein the insured was a soldier from Alabama stationed in New Jersey who had lent his car to another soldier there, and that soldier subsequently refused to return the car and then was involved in a fatal automobile

accident with several other soldiers. Id. Applying the Restatement (Second) principles, the court concluded that Alabama was the principal location of the risk, namely, the soldier's vehicle, because "[t]he vehicle was purchased and registered in Alabama and had remained so registered. [The soldier] had obtained the insurance policy in Alabama from a local insurance agent known to [the soldier] and his family and who was probably familiar with their Alabama roots. The policy was issued by an insurance company authorized to do business in the [s]tate of Alabama and which undoubtedly conducted its business in conformity with Alabama insurance law. [The soldier's] mother had 'signed' the policy presumably at the request of the insurance company and in conformity with either Alabama insurance laws and regulations or customs and practices. The premium rates were in all likelihood predicated upon Alabama's statistical experience. When the accident occurred, [the soldier] had been in New Jersey for only four or four and one-half months; his automobile had been in this [s]tate for only several weeks. At the time of the accident, [the soldier's] presence in New Jersey was temporary and he had planned to return to Alabama. In fact, he ultimately did so return."[7] Id., 38–39; see *Beckler* v.

---

[7] Relying on *New Jersey Manufacturers Ins. Co.* v. *MacVicar*, 307 N.J. Super. 507, 704 A.2d 1343, cert. denied, 156 N.J. 381, 718 A.2d 1210 (1998), the plaintiff discounts the importance of the issuance of the policy in Florida, and emphasizes that the mobility of automobiles "increases the probability that the law of a state other than the state where the policy issued will be applied to a particular loss." This reliance is, however, misplaced. In *MacVicar*, the choice was between New Jersey law, which prohibited the stacking of underinsured motorist coverage, and Pennsylvania law, which allowed stacking. Id., 511–12. The court concluded that Pennsylvania was the principal location of the risk, despite the fact that the insureds had purchased their policy while living in New Jersey because "as of the date of the [insureds'] move to Pennsylvania, a date and an event of which [the insurer] indisputably had notice prior to the accident, Pennsylvania would be the principal location of the risk. The insureds all resided there. The covered vehicles were all garaged there. The insureds would be doing all their local driving there. [The insurer], moreover, by its undertaking to issue a new Pennsylvania policy, clearly acknowledged its understanding that the locus

*State Farm Mutual Automobile Ins. Co.*, 195 Ariz. 282, 287, 987 P.2d 768 (App. 1999) (although policy was purchased by college student's parents and issued in Nebraska, "principal location of the insured risk" was Arizona because insurance agent "understood" that covered Jeep was with student in that state for "at least nine months out of the year"); *Amica Mutual Ins. Co. v. Bourgault*, 263 Ga. 157, 160–61, 429 S.E.2d 908 (1993) (New York was principal location of risk for cars covered by uninsured motorists policy purchased in Georgia by residents of that state because cars were principally garaged in New York and policy was written on New York forms); *Boardman v. United Services Automobile Assn.*, 470 So. 2d 1024, 1033 (Miss. 1985) (Nebraska was principal location of risk because "automobile liability insurance policy . . . [was] issued to a citizen of Nebraska covering his household" and each of three insured automobiles was " 'principally garaged in Nebraska' "); *Hartzler v. American Family Mutual Ins. Co.*, 881 S.W.2d 653, 655–56 (Mo. App. 1994) (although policy was purchased in Missouri and accident occurred there, Kansas was considered "principal location of the insured risk" because policyholders lived and kept their car in Kansas and policy was labeled as " 'Kansas Family Car Policy' " with references to Kansas law).[8]

---

of the risk had been transferred to Pennsylvania and that Pennsylvania insurance law was the appropriate law to govern its relationship with its insured." Id., 513. Accordingly, *MacVicar* is distinguishable from the present case because it involved a permanent move and change in the vehicles' location, while this case involves a car that is in Florida most of the year, with no indication in the record that the insureds had sought to obtain from the defendant a Connecticut insurance policy or intended to move the car to Connecticut exclusively.

[8] See also, e.g., *Vaughan v. Nationwide Mutual Ins. Co.*, 702 A.2d 198, 202–203 (D.C. 1997) (Maryland was "principal location of insured risk" because insured was Maryland citizen who kept insured vehicle in that state, despite fact that he was injured while at work in District of Columbia); *Allen v. State Farm Mutual Automobile Ins. Co.*, 214 Ill. App. 3d 729, 736–38, 574 N.E.2d 55 (1991) (Indiana law governed uninsured motorists' policy issued to decedent, who was passenger in vehicle involved in accident in

In light of this consistent body of case law, we conclude that Florida was the principal location of the insured risk. Notwithstanding the fact that the premium statements were mailed to and paid from Connecticut, the insured risk, namely, the Thunderbird, was registered in and located in Florida with O'Neill for at least seven months per year, and the relevant insurance policy had been issued and purchased in that state. See *American States Ins. Co.* v. *Allstate Ins. Co.*, supra, 94 Conn. App. 81–82. Indeed, we note particularly that the insurance policy is labeled prominently as a Florida automobile insurance policy, contains multiple references to Florida law, including its no-fault, arbitration and financial responsibility acts, and was accompanied by a special Florida amendatory endorsement.[9] See *Amica Mutual Ins. Co.* v. *Bourgault*, supra, 263 Ga. 160–61; *Hartzler* v. *American Family Mutual Ins. Co.*, supra, 881 S.W.2d 655–56; see also *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, supra,

---

Arkansas while operated by Illinois resident, when insured vehicle was "licensed, registered and garaged in Indiana"); *Lewis* v. *American Family Ins. Group*, 555 S.W.2d 579, 581–82 (Ky. 1977) (even when accident occurred in Kentucky, Indiana law applied because insurance contracts were entered in Indiana and covered cars were registered and garaged in that state); *Ohayon* v. *Safeco Ins. Co. of Illinois*, 91 Ohio St. 3d 474, 483, 747 N.E.2d 206 (2001) (although insured was injured in Pennsylvania, Ohio law governs uninsured motorists policy delivered in that state to policyholders whose "vehicles [are] principally garaged in Ohio"); *Dairyland Ins. Co.* v. *State Farm Mutual Automobile Ins. Co.*, 41 Wash. App. 26, 31–32, 701 P.2d 806 (Idaho law governed policy issued to vehicle owner who lived in Idaho, despite fact that owner was injured in Washington while his vehicle was driven by Washington resident, because policyholder "would, being a resident of Idaho, drive mainly in Idaho"), review denied, 104 Wash. 2d 1016 (1985).

[9] For example, the policy explicitly provides that its premium is considered "provisional and will be recomputed, if: (a) any provision of the Florida Automobile Reparations Reform Act (No-Fault Law) exempting persons from tort liability is found to be unconstitutional . . . ." The policy also notes that, in accordance with that law, any recomputation will include consideration of returned or credited premiums. In its dispute resolution provision, the policy also explicitly disclaims the applicability of the Florida Arbitration Act.

261 Conn. 609–10 (noting in § 188 of Restatement [Second] analysis that insurance policies contained endorsements required by and enforceable under Georgia law). Therefore, we conclude that, based on these factors, the parties clearly contemplated Florida as the principal location of the insured risk and that accordingly, a special presumption is established in the present case in favor of that state's law.

"In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6 (2) of the Restatement (Second), supra, provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6 (2), that interest will not defeat the § 193 presumption unless it is sufficiently compelling. As we indicated in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 417, the analysis begins but does not end with § 193." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 252 Conn. 782; see also *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 417 (presumptions created by §§ 188 and 193 of Restatement [Second] "merely provide a starting point; they do not control the result").

"[Section] 6 (2) of the Restatement (Second) [of Conflict of Laws], which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the most significant relationship: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the par-

ticular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." (Internal quotation marks omitted.) *Interface Flooring Systems, Inc.* v. *Aetna Casualty Co.*, supra, 261 Conn. 609.

Furthermore, "[§] 188 (2) [of the Restatement (Second), supra] lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Comment (e) to § 188 (2) states that the forum, in applying the principles of § 6 to determine the state of most significant relationship, should give consideration to the relevant policies of all potentially interested states and the relative interests of those states in the decision of the particular issue. The states which are most likely to be interested are those which have one or more of the [enumerated] contacts with the transaction or the parties. Id., § 188 (2), comment (e), p. 579.

"The appropriate starting point under § 188, therefore, is identification of the policy underlying the relevant law of each state having one or more of the listed contacts. If application of a particular state's law would further its underlying policy, that state is said to have an interest. See id., § 6 (2) (c). If two or more states have conflicting interests, the court must determine which gives rise to the most significant relationship. Id., § 188 (1)." (Internal quotation marks omitted.) *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 409–10. Moreover, application of the § 6 and § 188 factors is neither "mathematical" nor "mechanical." *Boardman* v. *United Services Automobile Assn.*, supra, 470 So. 2d 1034; see also *Beckler* v. *State Farm Mutual Automobile Ins. Co.*,

supra, 195 Ariz. 289 (describing significant relationship test as "qualitative rather than quantitative"); *Dairyland Ins. Co.* v. *State Farm Mutual Automobile Ins. Co.*, 41 Wash. App. 26, 31, 701 P.2d 806 ("[t]he most significant relationship test does not involve simply counting contacts"), review denied, 104 Wash. 2d 1016 (1985).

We begin by noting that the contacts listed in § 188 (2) of the Restatement (Second) support the application of Florida, rather than Connecticut, law. The policy was purchased and issued in Florida and covered a vehicle that was located in that state, and not Connecticut, the majority of the time. One named insured, O'Neill, was a domiciliary of Florida; the other, Sargent, was a domiciliary of Connecticut. Moreover, that the accident occurred in Connecticut is not relevant to our determination in this contract based action. See *Vaughan* v. *Nationwide Mutual Ins. Co.*, 702 A.2d 198, 202 (D.C. 1997) ("[t]he location of fortuitous events, such as automobile accidents, generally is not considered a persuasive factor in choice of law analysis in situations of economic loss rather than personal injury"); but see *Harleysville Ins. Co.* v. *Crum & Forster Personal Ins.*, 246 N.J. Super. 503, 507–508, 588 A.2d 385 (1990) (noting as relevant in contacts analysis that automobile accident for which coverage was sought occurred in New Jersey).

We next turn to the policy based factors of § 6 of the Restatement (Second), which require us to examine and weigh the competing public policies at issue in the present case. See *Boardman* v. *United Services Automobile Assn.*, supra, 470 So. 2d 1034. With the contacts analysis generally favoring the application of Florida law, the plaintiff can make a "sufficiently compelling" showing necessary to overcome the presumption already established by § 193 of the Restatement (Second) in favor of Florida only by demonstrating that

the application of Florida law would violate a "fundamental public policy" of Connecticut; *State Farm Mutual Automobile Ins. Co.* v. *Estate of Simmons*, supra, 84 N.J. 42; or be "offensive to our sense of justice."[10] *Boardman* v. *United Services Automobile Assn.*, supra, 1039.

"[N]ot all differences in the laws of two states demonstrate inconsistent public policies or interests. . . . Unless such differences are fundamental, foreign law need not be considered offensive to public policy." (Citation omitted.) *State Farm Mutual Automobile Ins. Co.* v. *Estate of Simmons*, supra, 84 N.J. 41. A disparity in the scope of Connecticut's law does not constitute the requisite fundamental difference. See id., 42 ("the difference in the insurance laws of each state as to the extent of coverage accorded to an insured's permittee does not implicate the fundamental public policy of these states").

The plaintiff contends that Connecticut public policy, as embodied in § 38a-335 (d), overrides Florida's interest in the present case. Section 38a-335 (d) provides that, "[w]ith respect to the insured motor vehicle, the coverage afforded under the bodily injury liability and property damage liability provisions in any such policy shall apply to the named insured and relatives residing in his household unless any such person is specifically excluded by endorsement." See also *Middlesex Ins. Co.* v. *Quinn*, 225 Conn. 257, 264 n.8, 622 A.2d 572 (1993) ("[a]utomobile liability insurers are required to provide

---

[10] "Every choice of law problem, by definition, arises out of a situation where the substantive law of the competing state differs from that of this state. Because of this and because every law of this state presumably reflects the public policy of this state, we are caught in a Catch-22. The way out is recognition that some of our laws reflect public policies which are more fundamental and more inviolable than others. Some of our laws reflect public policies more strongly felt and more deeply ingrained than others." *Boardman* v. *United Services Automobile Assn.*, supra, 470 So. 2d 1038–39.

liability coverage with respect to the insured automobile for the named insured, resident relatives of the named insured and permissive users"); Regs., Conn. State Agencies § 38a-334-5 (c) ("[t]he insurer's obligation to pay and defend may be made inapplicable . . . [8] to the operation of a motor vehicle by an individual or individuals specifically named by endorsement accepted by the insured, the form of which has been accepted for filing by the insurance commissioner"). Noting that insurance policies typically are contracts of adhesion, the plaintiff contends that this statute evinces Connecticut's public policy of establishing a minimum level of financial security for insured parties and compensating victims of automobile accidents. The plaintiff also argues that "[t]he automobile liability insurance statutes and regulations are the expression by our legislature of Connecticut's public policy against generic exclusionary language such as that contained in the [defendant's] policy which, without restriction, excludes named insureds and resident relatives from coverage."

In contrast, under Florida law, "[i]t is generally accepted, in the absence of a statutory prohibition, that provisions of automobile liability insurance policies excluding from coverage members of the insured's family or household are valid. . . . The reason for the exclusion is obvious: to protect the insurer from over friendly or collusive lawsuits between family members." (Citations omitted.) *Reid* v. *State Farm Fire & Casualty Co.*, 352 So. 2d 1172, 1173 (Fla. 1977); see also *Fitzgibbon* v. *Government Employees Ins. Co.*, 583 So. 2d 1020, 1021 (Fla. 1991) (reaffirming vitality of *Reid,* even after subsequent court decision abrogating spousal immunity "to the extent that insurance is available").

Although the plaintiff has not cited any decision holding that one state's public policy overcame the special presumption in favor of the law of the place of the

principal location of the risk,[11] our independent

[11] We address briefly the plaintiff's extensive reliance on *Clay* v. *Sun Ins. Office, Ltd.*, 363 U.S. 207, 80 S. Ct. 1222, 4 L. Ed. 2d 1170 (1960) (*Clay I*), and *Clay* v. *Sun Ins. Office, Ltd.*, 377 U.S. 179, 84 S. Ct. 1197, 12 L. Ed. 2d 229 (1964) (*Clay II*), as well as on *Hime* v. *State Farm Fire & Casualty Co.*, 284 N.W.2d 829 (Minn. 1979), cert. denied, 444 U.S. 1032, 100 S. Ct. 703, 62 L. Ed. 2d 668 (1980). These cases, and particularly *Hime*, appear helpful at first glance because of their factual similarities to the present case. The persuasive value of these cases is limited, however, because they do not apply conflict of law analyses that are consistent with the Restatement (Second) approach followed in Connecticut, but focus instead on due process, an issue not implicated in this case.

In *Clay I*, the insured, while a resident of Illinois, purchased a personal property insurance policy from a British company licensed to do business in Illinois, Florida and nine other states. *Clay I*, supra, 363 U.S. 208. That policy contained a clause that required any claim for a loss to be brought within twelve months after that loss. Id. Thereafter, the insured moved to Florida, sustained a personal property loss, and the insurer refused to pay the claim. Id. In its defense in the subsequent action, the insurer claimed, inter alia, that the lawsuit was untimely because it was brought beyond the twelve month period spelled out in the policy. Id., 208–209. This time restriction was valid under Illinois law, but invalid under Florida law. Id., 209. The question on the appeal to the United States Supreme Court was whether the Florida statute could be applied constitutionally to the Illinois made contract without violating due process. Id. After certifying the case to the Florida Supreme Court for determination of certain state law questions; id., 212; the United States Supreme Court, on the second appeal to that court, noted that "the policy was sold to [the insured] with knowledge that he could take his property anywhere in the world he saw fit without losing the protection of his insurance. In fact, his contract was described on its face as a Personal Property Floater Policy (World Wide). The contract did not even attempt to provide that the law of Illinois would govern when suits were filed anywhere else in the country. Shortly after the contract was made, [the insured] moved to Florida and there he lived for several years. His insured property was there all that time. The company knew this fact." (Internal quotation marks omitted.) *Clay II*, supra, 377 U.S. 182, quoting *Clay I*, supra, 221 (Black, J., dissenting). Addressing only the constitutional issue, without applying a Restatement (Second) or similar choice of law analysis, the Supreme Court concluded simply that Florida law could be applied constitutionally because that state "has ample contacts with the present transaction and the parties to satisfy any conceivable requirement of full faith and credit or of due process." *Clay II*, supra, 183.

*Hime* warrants additional discussion. In that case, the insured, a Florida resident, had purchased an automobile liability insurance policy that recognized that the insured car would be principally garaged in Florida. *Hime* v. *State Farm Fire & Casualty Co.*, supra, 284 N.W.2d 831. That policy also

research has located two New Jersey cases that illustrate just how "fundamental" the difference must be to overcome the § 193 presumption. In *Harleysville Ins. Co.* v. *Crum & Forster Personal Ins.*, supra, 246 N.J. Super. 504, a Florida resident came to New Jersey to sell a condominium that he owned in that state. While in New Jersey, he took his Mercedes to a garage for repair work. Id. A garage employee drove the Florida

---

contained an intrafamily immunity liability exclusion similar to the household exclusion in the present case. Id. The insured and his wife were involved in an accident in Minnesota with a Minnesota driver, and the insured was found 60 percent responsible for his wife's injuries. The insurance company refused to defend or to indemnify him because of the exclusion. Id. Choice of law was a crucial issue in the case because Florida law upholds household exclusions, while the relevant Minnesota statutes defined "insured" to include spouses, children or other relatives living in the named insured's household, with no provision at all for such exclusions. Id., 832 n.1, citing Minn. Stat. § 65B.43 (5). The Minnesota Supreme Court applied Professor Robert Leflar's conflict of laws approach that it had adopted in *Milkovich* v. *Saari*, 295 Minn. 155, 161, 203 N.W.2d 408 (1973), which considers "[f]ive choice-influencing considerations: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Hime* v. *State Farm Fire & Casualty Co.*, supra, 833. The court only considered contacts from the perspective of whether the parties' contacts with Minnesota were so "slight and casual" that it would "offend due process" to apply Minnesota law. Id., 832. The court did not apply the Restatement (Second), § 193, approach of determining the principal location of the risk, and then determining whether the contacts could overcome that presumption *without* consideration of the better rule of law.

We similarly disagree with the plaintiff's reliance on *Abramson* v. *Aetna Casualty & Surety Co.*, 76 F.3d 304, 305 (9th Cir. 1996), a case involving a New Jersey resident struck and killed by an underinsured motorist in Hawaii. In *Abramson*, the court concluded that Hawaii's antistacking laws applied to the New Jersey underinsured motorists' policy at issue in that case because of Hawaii's choice-of-law approach, which "creates a presumption that Hawaii law applies unless another state's law would best serve the interests of the states and persons involved." (Internal quotation marks omitted.) Id., citing *Peters* v. *Peters*, 63 Haw. 653, 660, 634 P.2d 586 (1981). *Abramson* is inapposite because, unlike the Restatement (Second) analysis followed in Connecticut, Hawaii's choice of law approach does not create a presumption in favor of the law of the state of the principal location of the risk.

resident in the Mercedes to his daughter's place of employment, and, while en route, they were involved in an automobile accident that resulted in a personal injury action against the garage and the owner of the car. Id., 505. The owner's Florida insurance policy contained a provision, known as a " 'shop rule exclusion,' " that would have excluded liability coverage for any person engaged in the process of selling, repairing, servicing, storing or parking the car. Id. A dispute arose about whether the garage's policy or the owner's policy was the primary coverage because such shop rule exclusions were void under New Jersey law, but seemingly valid under unclear Florida law. Id., 506. Applying the Restatement (Second) framework adopted by the New Jersey Supreme Court in *State Farm Mutual Automobile Ins. Co.* v. *Estate of Simmons*, supra, 84 N.J. 28, the court concluded that New Jersey law would apply because that state had the most significant relationship to the contract based claim in the case. The court concluded that shop rule exclusions "violate[d] the clear public policy of this [s]tate and [that] any policy provision containing such exclusion is void." (Internal quotation marks omitted.) *Harleysville Ins. Co.* v. *Crum & Forster Personal Ins.*, supra, 507. The court noted that, while Florida law was "somewhat equivocal" on this issue;[12] id.; New Jersey's public policy was sufficiently "clear" that, if "Florida law would deny coverage . . . that law would be offensive or repugnant to local public policy." (Internal quotation marks omitted.) Id.

In comparison, in *State Farm Mutual Automobile Ins. Co.* v. *Estate of Simmons*, supra, 84 N.J. 38, the New Jersey Supreme Court, after concluding that Ala-

---

[12] In its analysis, the New Jersey Appellate Division cited Florida cases that limited a vehicle owner's liability for the negligence of persons who operated his car while servicing it, but did not discuss insurance considerations. The court also noted that "application of the clear New Jersey law rather than the equivocal Florida precedents surely advances the certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied." *Harleysville Ins. Co.* v. *Crum & Forster Personal Ins.*, supra, 246 N.J. Super. 508.

bama was the principal location of the risk whose law "provisionally" should govern, noted that the legal conflict involved the extent of the initial consent that had been given by the insured, an Alabama resident stationed in New Jersey for military duty. Id., 41. Specifically, the court determined that both New Jersey and Alabama required insurers to provide coverage for people using vehicles with the express or implied consent of the named insured, but that Alabama's definition of consent was narrower than New Jersey's with respect to the scope and duration of the initial permission that had been given to use the car. Id., 41 and n.1. The court concluded that "the difference in the insurance laws of each state as to the extent of coverage accorded to an insured's permittee does not implicate the fundamental public policy of these states. Both states recognize that persons are entitled to the benefits of liability insurance when injured in accidents in which the vehicle was being driven by one who had obtained the use of the vehicle with the consent or permission of the insured. While each state differs as to the duration and character of that permission or consent, the public policy of each state nevertheless seeks to achieve the same fundamental goals and objectives." Id., 42.

We conclude that the competing policies at stake in the present case render it closer to *Estate of Simmons* than to *Harleysville Ins. Co.*, and that Connecticut's public policy in this area, as articulated by § 38a-335 (d), is not so "fundamental" as to override the special presumption in favor of Florida case law that allows household exclusions. Indeed, Connecticut's statute and regulation are not an absolute prohibition on such exclusions, but merely require notice and acceptance by the insured of an endorsement that "specifically exclude[s]" the relatives residing in the household of the named insured. General Statutes § 38a-335 (d). Connecticut's statute, therefore, prescribes a process by which such exclusions must be executed to be valid.

See General Statutes § 38a-335 (d); Regs., Conn. State Agencies § 38a-334-5 (c) (8). Put differently, whereas the court in *Harleysville Ins. Co.* found an overriding public policy interest in New Jersey's absolute prohibition of shop rule exclusion clauses, Connecticut's limitation on household exclusions is not absolute, but rather, is qualified, compared to a strong statement by the Florida courts that such policy provisions are not disfavored.

With respect to the remaining considerations of § 6 (2) of the Restatement (Second), we conclude that, under subdivision (d), the parties' "justified expectations" are protected by applying Florida law to an insurance policy that was purchased in that state and covers a vehicle that is garaged there most of the time. Finally, as to the consideration of subdivision (f), namely, "certainty, predictability and uniformity of result," and subdivision (g), namely, "ease in the determination and application of the law to be applied," it is easier and more predictable to apply Florida law and enforce the household exclusion, than it is to determine whether relatives have been "specifically excluded"; General Statutes § 38a-335 (d); a term not previously construed or applied by the appellate courts of this state.

Accordingly, we conclude that Connecticut's interests do not "substantially outweigh" those of Florida; *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 252 Conn. 789; and the plaintiff has, therefore, failed to demonstrate the "extraordinary circumstances" necessary to depart from the law of Florida, where the insured risk was principally located. Id. The Appellate Court, therefore, properly applied Florida law to the policy issued by the defendant, and reversed the judgment of the trial court that had applied Connecticut law instead.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.