******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARLES V. SONSON *v.* UNITED SERVICES
AUTOMOBILE ASSOCIATION
(AC 35890)

Alvord, Keller and Peters, Js.

*Argued May 20—officially released September 16, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. David R. Tobin, judge trial
referee.)

*Stephen R. Sugrue*, for the appellant (plaintiff).

*James J. Noonan*, with whom, on the brief, was *John
W. Cannavino*, *Jr.*, for the appellee (defendant).

*Opinion*

PETERS, J. "Standardized contracts of insurance continue to be prime examples of contracts of adhesion, whose most salient feature is that they are not subject to the normal bargaining processes of ordinary contracts." (Internal quotation marks omitted.) *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 264 n.6, 757 A.2d 526 (2000). In light of this industry practice, courts sometimes have allowed policyholders to obtain coverage despite their failure to comply strictly with the terms of their policy. See *Arrowood Indemnity Co.* v. *King*, 304 Conn. 179, 39 A.3d 712 (2012). The dispositive issue in this appeal is whether the trial court properly refused to extend this principle of lenity to the plaintiff, the owner of a race car, and require his automobile insurer to pay for damages to the car that occurred while he was preparing for an organized racing contest even though his insurance contract expressly excluded coverage for losses so incurred. The plaintiff has appealed from the judgment of the trial court enforcing the racing exclusion and thus denying his claim for reimbursement for the cost of repairs to his car. We affirm the judgment of the trial court.

On August 31, 2007, the plaintiff, Charles V. Sonson, filed a one count complaint claiming that the defendant, United Services Automobile Association, breached its insurance contract to pay for damages to the plaintiff's Ferrari. After a trial, the court found in favor of the defendant on two grounds. First, the Ferrari was damaged in a racing accident, and a clause in the plaintiff's automobile insurance policy expressly excluded coverage for losses incurred competing in or preparing for an automobile race. Second, the plaintiff had materially misrepresented where the car would be garaged and registered at the time the policy was issued, allowing for rescission under Virginia law. The plaintiff has appealed.

The plaintiff does not challenge the propriety of the court's findings of the relevant facts. In the spring of 2006, the plaintiff decided to acquire a Ferrari model F430 Challenge race car, an automobile designed for operation on race tracks and not "street legal," i.e., it cannot be driven on town and city streets because it does not have the safety equipment required for registration of automobiles in this country. The plaintiff already had several vehicles insured by the defendant, an insurance company that primarily provides insurance for present or former members of the armed forces of the United States and their dependents. Despite recently having been informed by a representative of the defendant that the defendant categorically does not issue policies on race cars, on March 20, 2006, the plaintiff telephoned the defendant's headquarters to add the Ferrari to his existing automobile insurance policy. Over the course of two telephone calls, the defendant's

representatives asked the plaintiff for information about the automobile he was seeking to have covered, including where it would be garaged and registered. Although the plaintiff claims he did not provide this information, the representatives noted in the defendant's computer system that the car would be garaged at the plaintiff's home in Williamsburg, Virginia, and would be registered in the state of Delaware.

On March 21, 2006, the defendant added the Ferrari to the plaintiff's existing policy. The policy contained a provision that excluded losses incurred while racing, or practicing or preparing for a race, in a facility designed for racing.

On January 24, 2007, the Ferrari was severely damaged, when, at Infineon Race Track in Sonoma, California, the plaintiff lost control of the car and crashed into a guardrail. The plaintiff promptly notified the defendant of the accident.

In response to this notification, on February 22, 2007, the defendant acknowledged that it had issued the automobile policy in question, but expressly reserved its right to enforce the terms of the insurance contract that, in its view, defeated the plaintiff's claim for compensation. During its investigation, the defendant discovered that the car had not been garaged in the location indicated in its computer system, nor had it been registered in Delaware or any other state. Thereafter, on May 30, 2007, the defendant sent the plaintiff a letter stating that the plaintiff's policy was rescinded because of the plaintiff's material misrepresentations that the car would be garaged at his home in Williamsburg and that the car would be registered in Delaware.

The plaintiff initiated the present action to enforce his policy with the defendant. In response, the defendant asserted the following special defenses: (1) the plaintiff intentionally, recklessly or negligently misrepresented or concealed material facts at the time when he applied for the policy; (2) coverage for damage to the Ferrari was barred by the racing exclusion of the policy; (3) the plaintiff's claim was barred by provisions of the policy regarding fraudulent statements or actions made in connection with an accident or loss; (4) the plaintiff did not have an insurable interest in the Ferrari; and (5) the plaintiff's claims were barred to the extent that the plaintiff had received compensation for his losses from others. After a trial to the court, the court concluded that the defendant properly had rescinded the policy for material misrepresentations under Virginia law, finding not credible the plaintiff's claims that the defendant's computer system had inaccurately recorded the information he had provided when securing the policy. Addressing the racing exclusion, the court concluded that coverage would have been properly denied on that basis had the policy not been

rescinded. On appeal, the plaintiff challenges both of these conclusions. We agree with the court that the racing exclusion was a proper basis for denial of coverage. Accordingly, we need not address the issue of rescission.

The plaintiff maintains that the court improperly considered the racing exclusion in the plaintiff's insurance policy because (1) that issue was not raised in the defendant's initial specification of the reasons for its denial of the plaintiff's insurance claim, and (2) the loss suffered by the plaintiff did not fall within the racing exclusion. We are not persuaded.

At the outset, we note that both parties agree with the court's determination that Virginia substantive law governs the issues presented by this case. See *American States Ins. Co.* v. *Allstate Ins. Co.*, 282 Conn. 454, 466, 922 A.2d 1043 (2007) (Florida law applied to automobile insurance dispute when parties contemplated Florida as principal location of automobile).

Our standard of review is well settled. "With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . . The trial court's legal conclusions [however] are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

The plaintiff's claim that the court acted improperly in considering the racing exclusion[1] is not persuasive in light of the record as a whole. Although the plaintiff correctly notes that the racing exclusion was not mentioned by the defendant as a basis for denial of coverage in its May 30, 2007 letter informing the plaintiff that his policy had been rescinded, the plaintiff fails to account for the February 22, 2007 reservation of rights letter issued by the defendant that expressly informed the plaintiff of the possibility of denial of coverage on the basis of the racing exclusion.[2] The plaintiff has failed to provide any authority, and we know of none, in support of his contention that an insurer that denies coverage on one basis is precluded from asserting another basis of denial in later legal proceedings, when proper notice has been issued to the policy holder. Accordingly, the court acted properly in considering the racing exclusion.

Next, we consider the plaintiff's claim that the loss suffered in the accident did not fall within the terms of the racing exclusion. Specifically, the plaintiff argues that at the time of the accident he was not competing in, or preparing or practicing for, a race.

"The interpretation of a contract presents a question of law subject to de novo review. . . . [O]n appeal [this court is not] bound by the trial court's interpretation of the contract provision at issue; rather, [this court has] an equal opportunity to consider the words of the contract within the four corners of the instrument itself. . . . Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein. . . . Additionally, [i]nsurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed mostly strongly against the insurer. . . . When an insurer drafts policy language setting forth exclusions that limit coverage under a policy, the insurer is required to use language that clearly and unambiguously defines the scope of the exclusions. . . . Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exception applies." (Citations omitted; internal quotation marks omitted.) *PBM Nutritionals, LLC* v. *Lexington Ins. Co.*, 283 Va. 624, 633–34, 724 S.E.2d 707 (2012).

In the present case, the relevant provision of the policy stated: "We will not pay for . . . [l]oss to your covered auto or any non-owned auto, located inside a facility designed for racing, for the purpose of: a. Competing in; or b. Practicing or preparing for; any prearranged or organized racing or speed contest." It is undisputed that the loss occurred at Infineon Race Track, a facility designed for racing. Therefore, the question before us is whether the circumstances of the plaintiff's activities, as found by the court, constitute competing in or practicing or preparing for any prearranged or organized racing or speed contest under the terms of the policy.

The court found that the plaintiff was accompanied by a mechanic and driving coach, was travelling at speeds of approximately seventy miles per hour on curves and ninety miles per hour on straightaways, and was wearing a fire suit, helmet, boots, and possibly

gloves.[3] Further, the court specifically found the plaintiff's claim that he had given up racing the Ferrari not to be credible. Even keeping in mind that any ambiguity in the language of the policy must be resolved in favor of the insured, it is apparent that the plaintiff's activities fell within the terms of the racing exclusion, as these findings clearly demonstrate that the plaintiff was practicing or preparing for a prearranged or organized racing or speed contest. Accordingly, the court properly determined that the racing exclusion was applicable.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff initially raised this issue, among others, in his January 13, 2011 motion for summary judgment. The court rejected the argument and denied the motion.

[2] The reservation of rights letter stated: "With respect to the loss that occurred on January 24, 2007 at Napa Valley, California, we believe that the policy may not provide coverage for the following reasons." It then reproduced the text of the racing exclusion provision of the policy. The letter also stated: "We're willing to continue with the investigation or settlement of any claim or lawsuit resulting from the incident. We will continue, however, only on the condition that our actions will not [h]arm any rights or defenses we currently have under the policy, including the rights and defenses that aren't specifically referred to in this letter. Please also note the following: We reserve the right to deny coverage at a later date. We reserve the right to bring legal action to have the rights of the parties decided. Our actions should not be interpreted as waiving or as preventing us from exercising our rights. Our actions should not be interpreted as an acknowledgment of liability or coverage. You may wish to consult your attorney about this incident."

[3] To the extent that the plaintiff challenges the court's factual findings regarding the circumstances of the accident, we conclude that they are not clearly erroneous, as they find support in the record, and we are not left with a firm and definite conviction that a mistake has been made. See *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 624, 987 A.2d 1009 (2010).

[4] Nothing in the record suggests that the court improperly placed the burden on the plaintiff to prove that the exclusion did not apply. Rather, the court expressly acknowledged that the burden was on the defendant to prove the applicability of the racing exclusion, a burden it met in demonstrating that the plaintiff was engaged in racing activities.